DECISION AND JUDGMENT ENTRY
{¶ 1} Belinda F. Porter, nka Ballow (hereinafter "Mother") appeals the judgment of the Scioto County Court of Common Pleas, Domestic Relations Division, in favor of Phillip Wolfgang Von Porter (hereinafter "Father"). The trial court refused to suspend Father's parenting time with his young daughter (female born 9-26-02); found Mother in contempt and awarded Father $1,600 in expenses related to parenting time supervision. On appeal, Mother contends that the trial court erred when it refused to suspend Father's parenting time with their child. She contends that the trial court's "best interest of the child" finding was in error because the evidence showed that the safety of the child was jeopardized because of sexual abuse. Because competent, credible evidence supports the trial court's finding, we disagree. Mother next contends that the trial court erred when it found her in contempt. Because competent, credible evidence supports *Page 2 
the trial court's findings, we find that the trial court did not abuse its discretion. Finally, Mother contends that the trial court erred when it penalized her for the contempt by awarding Father $1,600 in expenses related to supervised parenting time when Father only requested half of those expenses. Because the law of contempt allows the court to compensate Father, we disagree. According, we affirm the judgment of the trial court.
 I. {¶ 2} Mother and Father divorced in 2003. The trial court designated Mother as the residential parent of their child. In accordance with the parenting order, Father took his daughter for an extended period in August 2005. Shortly afterward, Mother claimed that the Father sexually abused their daughter. Father denies any abuse occurred. Mother informed Children Services (hereinafter "CS") and the relevant law enforcement agencies. CS did complete a "safety plan" regarding the daughter, and law enforcement investigated Father for possible criminal charges, but took no formal action. On her own, Mother refused to allow daughter to visit Father.
 {¶ 3} Mother continued denying visitation to Father until June 2006 when the court ordered Mother to bring the child to supervised visitation. Although she did not bring the child to the first supervised visit, she appears to have complied with the order thereafter. During these visits, an investigator observed Father's interactions with his daughter and concluded that there were no signs that she was abused. These supervised visits continued until around March 2007, when the magistrate restored Father's visitation and found Mother in contempt.
 {¶ 4} Mother appeals and asserts the following two assignments of error: I. "The trial court erred in not granting [Mother's] motion to suspend [Father's] parenting time *Page 3 
with the parties' minor child based on the safety of the child and thus in the best interest of same." And, II. "The trial court erred in finding [Mother] in contempt of [Father's] parenting time, and thus erred in allocating [$1,600] for expenses of supervised parenting time against [Mother]."
 II. {¶ 5} Mother contends in her first assignment of error that the trial court erred when it denied her motion to suspend Father's parenting time with their minor child. She asserts that the evidence shows that the Father sexually abused the child in the past. The crux of Mother's claim is that the trial court's decision is against the manifest weight of the evidence.
 {¶ 6} An appellate court will not reverse a trial court's factual finding unless it is against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. A finding is not against the manifest weight of the evidence when the record contains some competent, credible evidence supporting it. Id. "This standard of review is highly deferential and even `some' evidence is sufficient to sustain the finding and prevent a reversal."Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159. "[A] reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge `* * * is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony. Id., citing In re Jane Doe I (1991), 57 Ohio St.3d 135; see, also, Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. *Page 4 
 {¶ 7} Here, we find that competent, credible evidence supports the trial court's findings.
 {¶ 8} The magistrate took extensive evidence on the underlying claim of sexual abuse and concluded that it was doubtful that abuse occurred. In particular, the magistrate did not find the Mother credible.
 {¶ 9} The Supreme Court of Ohio has stated that the trier of fact "`is the sole judge of the weight of the evidence and the credibility of witnesses. It may believe or disbelieve any witness or accept part of what a witness says and reject the rest. (In so doing it) * * * should consider the demeanor of the witness and the manner in which he testifies, his connection or relationship with the * * * (plaintiff) or the defendant, and his interest, if any, in the outcome.'" McKay MachineCo. v. Rodman (1967), 11 Ohio St.2d 77, 82, quoting State v. Antill
(1964), 176 Ohio St. 61, 67.
 {¶ 10} The magistrate noted that CS's only action regarding the alleged sexual abuse was completing a "safety plan" stating that the child was not to be sent to her father while the investigation was pending. Mother presented no evidence of an ongoing investigation during the entire period that she denied visitation to Father. In fact, she presented no evidence that CS took any investigatory action. However, the Scioto County Sheriff's Department did conduct a criminal investigation. As part of that investigation, Detective Conkel subjected both Mother and Father to voice stress analysis. The results of the test were inconclusive because it showed both were telling the truth about the abuse their daughter allegedly suffered.
 {¶ 11} Mother did take her daughter to Children's Hospital for help coping with the alleged abuse. A hospital employee interviewed the girl, during which she apparently *Page 5 
gave a "consistent history" of abuse. Based on this interview, the hospital concluded the daughter was a victim of sexual abuse and entered her into the program. They recommended, as part of the program, that Father have no contact with the child. Mother never proffered testimony of the hospital employee who performed the initial interview, but she did provide testimony from someone else involved in the program. This witness testified that during a group session, where the members of the group were to mold their abuser with Play-doh, the girl mentioned once that her dad "touched her peepee." The social worker, however, repeatedly stated she could not give a recommendation regarding the daughter's custody.
 {¶ 12} The Mother and others in her family testified that the girl reacted negativity around men with a similar appearance to Father. But the social worker supervising the visits testified that she saw nothing in the girl's behavior that would suggest abuse. During those visits, the girl behaved normally and interacted with her father normally. In addition, Mother's current husband testified that the girl behaved normally before and after the supervised visits with Father.
 {¶ 13} Father produced testimony from his other children who had interacted with the girl during this period. They testified that the girl behaved normally.
 {¶ 14} After listening to the above testimony, the magistrate made findings regarding the mother's credibility. It noted that a court convicted the Mother of telephone harassment after the Father complained that Mother was calling and harassing him. The magistrate found that Mother's behavior toward Father was "vindictive and venomous." The magistrate also found that her testimony was "extremely suspect," and that her allegations of sexual abuse were "tenuous at best." *Page 6 
 {¶ 15} In short, the magistrate listened to both the Mother's version and the Father's version and simply chose to believe the Father. That is its province. The trial court adopted the magistrate's findings. Competent, credible evidence supports the findings.
 {¶ 16} Accordingly, we overrule Mother's first assignment of error.
 III. {¶ 17} Mother contends in her second assignment of error that the trial court erred when it found her in contempt and awarded more expenses to Husband than he requested.
 {¶ 18} "A person guilty of any of the following acts may be punished as for a contempt: (A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or an officer[.]" R.C. 2705.02(A). This includes parenting time orders or decrees. R.C. 2705.031(B)(2). "It is no defense to a finding of civil contempt that a party acted in good faith or upon the advice of counsel." State ex rel.Adkins v. Sobb (1988), 39 Ohio St.3d 34, 36.
 {¶ 19} The law of contempt is intended to uphold and ensure the effective administration of justice, secure the dignity of the court, and to affirm the supremacy of law. Cramer v. Petrie (1994),70 Ohio St.3d 131, 133. A court possesses both inherent and statutory authority to compel compliance with its lawfully issued orders. State ex rel.Bitter v. Missig (1995), 72 Ohio St.3d 249, 252; R.C. 2705.02(A). The decision of whether to find one in contempt of court rests in the sound discretion of the trial court and will not be overturned on appeal absent an abuse of that discretion. State v. Kilbane (1980),61 Ohio St.2d 201, paragraph one of the syllabus. An abuse of *Page 7 
discretion connotes a decision by the trial court that is unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151,157.
 {¶ 20} Contempt may be classified as either civil or criminal depending on the court's underlying rationale and the penalty imposed. Civil contempt orders seek to coerce compliance with the court's orders while criminal orders punish the party who offends the court.Denovcheck v. Bd. of Trumbull Cty. Commrs. (1988), 36 Ohio St.3d 14, 16;Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250, 253-254.
 {¶ 21} A finding of civil contempt does not require proof of purposeful, willing, or intentional violation of a trial court's prior order. Pugh v. Pugh (1984), 15 Ohio St.3d 136, 140. Furthermore, a sanction for civil contempt must allow the offender an opportunity to purge himself or herself of the contempt. Brown, supra.
 {¶ 22} Here, the court found Mother in contempt and gave her an opportunity to purge the same. Mother could, inter alia, purge the contempt by crediting Father $1,600 for expenses of supervised parenting time. Therefore, we classify the trial court's order as civil contempt.
 {¶ 23} The burden of proof in this civil contempt action was clear and convincing evidence. Brown at 253. "Clear and convincing evidence" is evidence that will form a firm belief in the mind of the trier of fact as to the facts sought to be established. Cincinnati Bar Assn. v.Massengale (1991), 58 Ohio St.3d 121, 122. "Clear and convincing evidence" is considered a higher degree of proof than a "preponderance of the evidence," the standard generally used in civil cases; "clear and convincing evidence" is a less stringent requirement than the "beyond a reasonable doubt" standard used in criminal proceedings. Id. Appellate courts will reverse a trial court's *Page 8 
finding decided under the "clear and convincing evidence" standard only if it is not supported by competent, credible evidence. State v.Schiebel (1990), 55 Ohio St.3d 71, 74.
 {¶ 24} Father moved to cite Mother for contempt three times. Based on Mother's wrongful denial of Father's legal parenting time, the trial court found Mother in contempt. Here, the court's order provided, in relevant part, that Mother was sentenced to 30 days in jail. But she was allowed to purge her contempt if she complied with the following: 1) she pay $350 in attorney's fees; 2) she fully complied with the parenting time schedule; 3) she allows Father to have four weeks of extended time with the child in 2007; and 4) she pay the costs associated with Father's supervised visits during the pendency of the action, which came to $1,600.
 {¶ 25} Here, we find competent, credible evidence supports the court's decision that Mother failed to prove she was justified in denying Father visitation as provided for under the parenting plan.
 {¶ 26} The testimony showed that the Mother continued to deny Father his visitation even after the sheriff concluded his investigation and the child completed the Children's Hospital program.
 {¶ 27} We note that even if Mother was justified in denying visitation during the early investigatory stage, she was not so justified once the investigation was closed and no action was taken against Father. While it was proper for Mother to rely on Children Hospital's advice to keep the girl away from Father until the program was completed, the child appears to have completed the program in January 2006. As a result, the Mother was not justified in denying visitation to Father for over a year. *Page 9 
 {¶ 28} Therefore, competent, credible evidence supports the trial court's contempt finding.
 {¶ 29} Mother further contends that the trial court lacked the legal authority to award more expenses than Father requested. She asserts that Father only requested one-half of the expenses, not all of the expenses. "We review questions of law de novo." Cuyahoga Cty. Bd. of Commrs. v.State, 112 Ohio St.3d 59, 2006-Ohio-6499, ¶ 23.
 {¶ 30} The punishment for civil contempt is remedial or coercive in nature and for the benefit of the complainant, i.e., conditional fines and prison sentences. Pugh at 139. We have previously recognized that "[c]ompensation of the injured party has been a traditional function of civil contempt." Oak Hills Bank v. Ison, Jackson App. No. 03CA5,2003-Ohio-5547, ¶ 29, citing First Bank of Marietta v. Mascrete (1998),125 Ohio App.3d 257, 267-268. This court went on to state, "judicial sanctions in civil contempt proceedings may be employed to compensate the complainant for losses sustained where it can be proven that the damages were a direct result of the contempt." Id.
 {¶ 31} In contempt proceedings, the general rule is that a trial court may compensate the complainant for losses. Cincinnati v. CincinnatiDistrict Council 51 (1973), 35 Ohio St.2d 197, 207. Thus, in awarding compensation to a complainant, the trial court is generally constrained only by the amount of loss suffered. Consequently, if the amount awarded to the complainant does not exceed the loss, then the award is proper.
 {¶ 32} For the above stated reasons, we find that the amounted requested, on its own, does not limit the amount a trial court can award a complainant in contempt proceedings. *Page 10 
 {¶ 33} We now turn our attention to the question of whether the trial court abused its discretion by determining that Father was entitled to compensation of $1,600.
 {¶ 34} Here, Beth Warner, who supervised some of the visits, testified that the cost of the supervised visits were $60 an hour. This amount appears uncontested. At the December hearing, Father testified that he had been attending these supervised visits since July. At the time when Father's visitation was fully restored he had spent $60 every Sunday for eight months. It would appear that Father's expenditures exceeded the $1,600 the court awarded him.
 {¶ 35} Therefore, we find that competent, credible evidence supports the trial court's $1,600 expense finding.
 {¶ 36} Consequently, we find that the trial court did not abuse its discretion when it found Mother in contempt and awarded Father the $1,600 for expenses involving the supervised parenting time.
 {¶ 37} Accordingly, we overrule Mother's second assignment of error and affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 11 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and appellant pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J.: Concurs in Judgment and Opinion.
Harsha, J.: Not Participating. *Page 1