OPINION *Page 2 
{¶ 1} Plaintiff-Appellant, Rose Oberst, appeals the April 25, 2008, decision of the Farifield County Common Pleas Court, Domestic Relations Division, which partly denied Appellant's motion for contempt and granted Defendant-Appellee, Paul Oberst's, motion for contempt, motion to compel, and motion to modify parenting time.
 STATEMENT OF THE CASE AND FACTS {¶ 2} Appellant and Appellee were married on February 11, 1984. Six children were born as a result of the marriage: Angelique (born 7/26/84), Ashley (born 8/30/85), Amanda (born 3/8/87), Michelle (born 3/12/90), Paul (born 4/12/93), and Anne (born 6/11/96). The parties were joint owners of a marital residence as well as rental properties at 1951-1957 Rock Creek Drive. Appellant filed a complaint for divorce on July 30, 2003. Appellee filed an answer and counterclaim on August 15, 2003. An Agreed Judgment Entry and Decree of Divorce ("Agreed Entry") was filed on May 31, 2005.
 {¶ 3} On November 4, 2005, Appellant filed a motion to find Appellee in contempt of court for failing to pay certain credit card and medical bills, for failing to transfer certain car titles, and for failure to execute a quit claim deed to the Rockcreek apartments in accordance with the terms of the Agreed Entry.
 {¶ 4} On March 23, 2006, Appellee filed a motion to modify the parenting agreement. On June 7, 2006, Appellee filed a motion to compel discovery. On July 18, 2006, Appellee filed a motion for contempt, alleging that Appellant failed to refinance the Rockcreek apartments and pay him the equity agreed upon in the Agreed Entry in the amount of $17,561.50. On November 8, 2006, Appellee filed a motion to escrow funds *Page 3 
from the refinancing and on December 4, 2006, he again filed a motion to compel discovery.
 {¶ 5} The motions came for hearing before a magistrate on January 10, 2007, and January 31, 2007, where both parties presented testimony and evidence as to their claims. On March 7, 2008, the magistrate issued a decision denying Appellant's motion for contempt in part and granting it in part. The magistrate found Appellee in contempt for failure to sign a quit claim deed within ten days of the divorce decree, but found that Appellee had purged the contempt by subsequently transferring a copy of the quit claim deed to Appellant.
 {¶ 6} The magistrate granted Appellee's motion for contempt, finding that Appellant failed to pay Appellee $17,651.50 from the closing of the refinancing of the Rockcreek apartments on July 7, 2006. The magistrate further ordered Appellant to pay $2,500.00 in attorney's fees in relation to the contempt finding and failure to comply with the motions to compel filed by Appellee. The magistrate further granted Appellee's motion to modify parenting time.
 {¶ 7} Appellant filed written objections to the magistrate's decision on March 7, 2008, and Appellee filed a written response to the objections on March 14, 2008. The trial court affirmed the magistrate's decision on April 25, 2008.
 {¶ 8} Appellant raises eight Assignments of Error:
 {¶ 9} "I. THE REFUSAL OF THE TRIAL COURT TO ENFORCE THE AGREED JUDGMENT ENTRY AND DECREE OF DIVORCE WHERE IT STATES "ALL OF THE PREVIOUS TEMPORARY ORDERS OF THIS COURT ARE SPECIFICALLY PRESERVED AND THE PARTIES SHALL CALCULATE THE MONEYS OWED FROM *Page 4 
EACH TO THE OTHER AND ANY BALANCE OWED TO EITHER THE PLAINTIFF OR DEFENDANT SHALL BE PAID" IS ERROR AND A VIOLATION OF THE DUE PROCESS AND EQUAL PROTECTION AND THE DEFENDANT/APPELLE WAIVED ALL RIGHTS TO ENFORCEMENT UNTIL HIS AGREEMENT WAS FULFILLED AND HE WAS ESTOPPED FROM BRINGING HIS CONTEMPT ACTION.
 {¶ 10} "II. THE TRIAL COURT ERRED BY NOT FINDING THE DEFENDANT/APPELLEE IN CONTEMPT FOR HIS FAILURE TO ". . . . PAY DISCOVER CARD IN THE APPROXIMATE AMOUNT OF $3,900.00."
 {¶ 11} "III. THE TRIAL COURT ERRED BY ALLOWING THE DEFENDANT/APPELLEE TO SET OFF THE MEDICAL BILL HE WAS ORDER [SIC] TO PAY UNDER THE AGREED ENTRY ("THE DEFENDANT IS TO PAY THE MEDICAL BILLS INCURRED BY THE PLAINTIFF IN THE AMOUNT OF $295.00") BUT REFUSING TO ALLOW THE PLAINTIFF/APPELLANT THE SAME RIGHT OF SET OFF AND THEREBY DENYING THE PLAINTIFF/APPELLANT DUE PROCESS AND EQUAL PROTECTION UNDER THE LAW.
 {¶ 12} "IV. THE TRIAL COURT ERRED BY NOT FINDING THE DEFENDANT/APPELLEE IN CONTEMPT FOR FAILURE TO ABIDE BY THE AGREED JUDGMENT ENTRY AND DECREE OF DIVORCE BY FAILING TO "UPON THE FILING OF THIS ENTRY THE DEFENDANT SHALL IMMEDIATELY EXECUTE A QUIT CLAIM DEED TRANSFERRING ALL OF HIS INTEREST IN THIS PROPERTY TO THE PLAINTIFF." THE TRIAL COURT AFTER FINDING SUCH CONTEMPT SHOULD HAVE AWARDED ATTORNEY FEES. *Page 5 
 {¶ 13} "V. THE TRIAL COURT ERRED WHEN IT FOUND THAT THE LANGUAGE OF AN AGREED JUDGMENT ENTRY AND DIVORCE DECREE IS TO BE CONSTRUED AGAINST THE SCRIBNER WHO SIMPLY COPIED A HAND WRITTEN MEMORANDUM OF AGREEMENT AND THAT THE INABILITY TO CALCULATED "CALCULATE THE MONEYS OWED FROM EACH TO THE OTHER" DUE TO THE DEFENDANT/APPELLEE'S FAILURE TO SUPPLY NEEDED INFORMATION IS THE FAULT OF PLAINTIFF/APPELLANT [SIC].
 {¶ 14} "VI. THE TRIAL COURT ERRED BY CALCULATING ANY FUNDS THAT MIGHT BE DUE FROM THE PLAINTIFF/APPELLANT TO THE DEFENDANT/APPELLEE FROM THE REFINANCING OF THE ROCKCREEK APARTMENTS SINCE THE DEFENDANT/APPELLEE NEVER PROVIDED THE VALUE OF THE THRIFT SAVING PLAN OR IN ANY WAY ATTEMPTED TO "CALCULATE THE MONEYS OWED FROM EACH TO THE OTHER" MAKING THE CALCULATIONS IMPOSSIBLE.
 {¶ 15} "VII. THE TRIAL COURT ERRED BY NOT ALLOWING: THE PLAINTIFF/APPELLANT CREDIT FOR ONE HALF OF THE TAX REFUND AS SHOWN ON EXHIBIT F AND THE SCHOOL TAXES AND ALL OF THE PREVIOUS TEMPORARY ORDERS OF THE TRIAL COURT, WHICH WERE SPECIFICALLY PRESERVED.
 {¶ 16} "VIII. THE TRIAL COURT ERRED IN RULING ON THE MOTION FOR CONTEMPT FILED BY THE DEFENDANT APPELLEE AGAINST THE PLAINTIFF/APPELLANT SINCE IT WAS PREMATURE. *Page 6 
 I. {¶ 17} In her first assignment of error, Appellant argues that the trial court erred by refusing to enforce the Agreed Entry, which stated that "all of the previous temporary orders of this court are specifically preserved and the parties shall calculate the moneys owed from each to the other and any balance owed to either the plaintiff or defendant shall be paid." Specifically, Appellant claims that the trial court should have declined to adjudicate the issues as to the amount of money owed by each party to the other. We would note, however, that Appellant was the first party to file a contempt motion for failure to comply with the Agreed Entry with respect to the payment of bills and debts and set-offs.
 {¶ 18} There are two types of contempt: criminal contempt and civil contempt. Criminal contempt generally results in incarceration with no opportunity for the contemptnor to purge himself or herself of the contempt, see, e.g., Brown v. Executive 200, Inc. (1980),64 Ohio St.2d 250, 416 N.E.2d 610. Civil contempt is intended to be remedial or coercive in nature, and any sanction imposed by the court for civil contempt must provide the contemptnor with the opportunity to purge, Id.
 {¶ 19} The standard of proof in a civil contempt proceeding is by clear and convincing evidence. Brown v. Executive 200, Inc. (1980),64 Ohio St.2d 250, 416 N.E.2d 610. The determination of "clear and convincing evidence" is within the discretion of the trier of fact. We will not disturb the trial court's decision as against the manifest weight of the evidence if the decision is supported by some competent, credible evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279. *Page 7 
 {¶ 20} In addition, our standard of reviewing a court's judgment in a contempt proceeding is the abuse of discretion standard. Hout v.Hout, 5th Dist. No. 2007-CA-111, 2008-Ohio-2684, citingState ex rel. Celebrezze v. Gibbs (1991), 60 Ohio St.3d 69,573 N.E.2d 62. The Supreme Court has repeatedly held an abuse of discretion implies the court's attitude is unreasonable, arbitrary, or unconscionable,Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. InBoley v. Boley (September 19, 1994), 5th Dist. No. CA498, we stated "[t]his Court will not substitute our judgment for that of the trial court and will not impose punishment for the violation of a court order when the court that made the original order finds a legitimate excuse." See also Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621, 614 N.E.2d 748.
 {¶ 21} In the present case, the parties had an Agreed Entry and Decree of Divorce, meaning the parties agreed upon the terms of the Entry issued by the court. It is not uncommon for parties to later question the interpretation of clauses in such agreements. Sowald Morganstern Domestic Relations Law, 4th Ed. Thomson West Publishing (2002), Section 9:48. Where ambiguity is complained of and where the parties dispute the meaning of clauses in the agreement, it is the duty of the court to examine the contract and determine whether the ambiguity exists. If an ambiguity does exist, the court has the duty and the power to clarify and interpret such clauses by considering the intent of the parties as well as the fairness of the agreement. Id., citations omitted.
 {¶ 22} If ambiguity exists as to the provisions of an agreement in a domestic case, or if there is a conflict as to interpretation of the provisions of such an agreement, the court may take testimony regarding the parties' "intention to assist in construing the *Page 8 
language of a separation agreement. The court may consider parol evidence." Id., citations omitted. The court may also interpret and enforce its property division orders when later disagreements arise. Id. See also, Kincaid v. Kincaid (1997), 117 Ohio App.3d 148, 690 N.E.2d 47.
 {¶ 23} These proceedings were instigated by Appellant when she filed for contempt proceedings against Appellee. The parties clearly could not agree as to set-offs and moneys owed. Both parties had the opportunity to present evidence on these issues. As explained below, Appellant failed to produce sufficient evidence supporting the amount of money she claimed Appellee owed her. The magistrate issued an eleven page written decision supporting its ruling in this matter. The magistrate repeatedly referred to the Agreed Entry in making an informed decision on this matter. Accordingly, we do not find that the trial court abused its discretion in determining the issues brought before it by the parties.
 {¶ 24} Appellant's first assignment of error is overruled.
 II., IV., VIII. {¶ 25} In her second and fourth assignments of error, Appellant argues that the trial court erred by failing to find Appellee in contempt because Appellee did not pay the Discover Card credit card in the amount of $3,900.00 and by not awarding attorney's fees when it found Appellee in contempt for not immediately signing the quit claim deed transferring all of his interest in the Rockcreek property to Appellant. Appellant further claims in assignment of error eight that the trial court erred in finding her in contempt for failing to give Appellee $17,651.50 upon closing of the refinancing of the Rock Creek Apartments. *Page 9 
 {¶ 26} Our standard of review regarding a finding of contempt is limited to a determination of whether the trial court abused its discretion. Wadian v. Wadian, 5th Dist. No. 2007 CA 00125, 2008-Ohio-5009, ¶ 12 citing In re Mittas (Aug. 6, 1994), 5th Dist. No. 1994 CA 00053. As we previously stated, in order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140, 1142. As the trial court was in the best position to judge the credibility of the parties and to determine whether Appellee violated a court order, we cannot find that the court abused its discretion in denying Appellant's motion.
 {¶ 27} The trial court considered the motion for contempt with regard to the Discover Card and stated that Appellant failed to meet her burden of proof regarding the motion. Appellee presented evidence that he consistently made payments on the Discover Card. (See Defendant's Exhibit B). Accordingly, we do not find that the trial court abused its discretion in denying Appellant's contempt motion in that regard.
 {¶ 28} We further cannot find that the trial court erred in refusing to award Appellant attorney's fees when it found Appellee in contempt for failing to immediately transfer the quit claim deed on the Rockcreek property. Evidence was presented that Appellant did not attempt to contact Appellee about transferring the quit claim deed prior to filing the motion for contempt on November 7, 2005. Moreover, the court found that Appellant did not produce any evidence that her lack of possession of a copy of the deed resulted in any damage, expense, or otherwise prevented her from refinancing the *Page 10 
property. Accordingly, the court's determination that the request for attorney's fees and costs was inappropriate was not an abuse of discretion.
 {¶ 29} Regarding the finding of contempt against Appellant and the order that Appellant pay attorney's fees, we would again note that the decision of whether to find a party in contempt of court rests in the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. State v. Kilbane (1980), 61 Ohio St.2d 201, paragraph one of the syllabus, 400 N.E.2d 386.
 {¶ 30} Competent, credible evidence supports the trial court's contempt finding, and also its imposition of fines and fees. Evidence presented at the hearing shows that the divorce decree stated that "the plaintiff shall within one year refinance the mortgage on this property so as to remove the defendant's name from the mortgage. Within one year the plaintiff shall pay the defendant his equity which is one half of the equity in this property. The one half of the equity of the defendant is defined as $207,000.00 minus the mortgage balance of $130,697.01 divided by two and then minus $20,500.00 (one half of the Thrift Savings Plan). $207,000.00-130,697.01 /2 = 38,151.50 — 29,500.00 = $17, 651.50. If the plaintiff fails to refinance this mortgage and remove the liability of the defendant from the mortgage or becomes delinquent more than ninety days on the mortgage payments while the defendant is still on the mortgage, then these apartments shall be sold to pay the equity interest of the defendant."
 {¶ 31} The one year period began to run on the date of the filing of the Agreed Entry, which was February 24, 2005. The Appellee filed his motion for contempt on July 16, 2006, over twelve months after the decree was filed. Appellant did not apply for refinancing until December, 2005, and the closing was not scheduled to occur until *Page 11 
June, 2006. Appellant sought a continuance of a scheduled trial date on the contempt motion for the purposes of attending the real estate closing. Evidence adduced at the hearing showed that the closing did not occur on June 30, 2006, because Appellant was unwilling to pay Appellee directly from the closing or otherwise place the proceeds from the closing in escrow. Appellant closed on the loan on July 7, 2006, with a different title agency and received a check for $27,111.19 in net proceeds.
 {¶ 32} Prior to the June 30, 2006 closing date, counsel for both parties communicated and Appellant's counsel provided a list of debts to Appellee's counsel, claiming that these debts offset Appellee's interest in the proceeds of the refinancing. Appellee disagreed with the set offs and requested that the proceeds be placed into Appellant's attorney's trust account pending resolution of the matter. Appellee testified that his attorney's attempts to contact Appellant's attorney to resolve the offset issue prior to the closing date were without success. He further testified that he did not receive any notice of the closing and he did not receive any monies due to him as required in the divorce decree.
 {¶ 33} Appellant listed fourteen different liabilities that she believed Appellee owed her money for. The magistrate, in reviewing the matter, determined that Appellant did not provide any documents to support her claims, nor did she meet her burden of proof in proving that the monies she claimed Appellee owed her were proper offset amounts. The magistrate found Appellant in contempt, stating she "was aware of her obligation to pay this money to the Defendant. The Magistrate further finds that the Plaintiff was not cooperative in attempting to work out the offset issues prior to closing. The Magistrate further finds that once the Defendant's counsel made the closing *Page 12 
company aware of the orders concerning his payment set forth in the Agreed Judgment Entry Decree of Divorce, the Plaintiff knowingly changed closing companies without notice to the Defendant in an attempt to avoid payment to the Defendant. The Magistrate finds that the Plaintiff's only defense to the contempt charge has been that she is owed money from the Defendant. The Magistrate further finds that the Plaintiff provided no documentation to support the claims of money owed to warrant any offset from the $17,651.50 owed to Defendant. The Agreed Judgment Decree of Divorce does not provide that any monies owed to either party pursuant to the preservation of the Temporary Orders provision shall be offset against either party's equity interest in the apartment building."
 {¶ 34} "The punishment for civil contempt is remedial or coercive in nature and for the benefit of the complainant, i.e., conditional fines and prison sentences." Porter v. Porter, 4th Dist. No. 07CA3178, 2008-Ohio-5566, at ¶ 30. Generally, in contempt proceedings, a trial court may compensate the complainant for losses. Id. citingCincinnati v. Cincinnati District Council 51 (1973), 35 Ohio St.2d 197,207, 299 N.E.2d 686, 694. We do not find that awarding Appellee $2,500 in attorney's fees was an abuse of discretion. Appellee testified that he incurred $7,479.61 in attorney fees and expenses to date in this case, and that he had made payments totaling $4,164.80 at the time of the hearing. He testified that he filed motions to compel discovery that Appellant failed to comply with and that he therefore had to subpoena the requested documents, which resulted in additional attorney fees of $1,000.00. The magistrate found that had Appellant complied with the requests, lengthy litigation would likely have been avoided. *Page 13 
 {¶ 35} Based on the foregoing, Appellant's second, fourth, and eighth assignments of error are overruled.
 III., VI., VII. {¶ 36} In her third, sixth, and seventh assignments of error, Appellant argues that the trial court erred in allocating debt and set offs. Specifically, Appellant argues that (1) the trial court erred in allowing Appellee to set off the medical bill he was ordered to pay under the Agreed Entry because he paid a gas bill owed by Appellant in a similar amount; (2) the trial court erred by calculating funds due from Appellant to Appellee from the refinancing of the Rockcreek Apartments because Appellee failed to provide the actual value of the Thrift Savings Plan; and (3) the trial court erred by not allowing Appellant credit for one half of the tax refund and the school taxes.
 {¶ 37} The determination of the trial court with respect to division of property, assets and liabilities will not be disturbed absent an abuse of discretion. See Holcomb v. Holcomb (1989), 44 Ohio St.3d 128,131, 541 N.E.2d 597. Accordingly, we must look at the totality of the circumstances and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
 {¶ 38} We would note, initially, that Appellant has not cited to any legal authority to illustrate that the trial court has abused its discretion in making a determination as to the division of liabilities and set offs there from.
 {¶ 39} At the hearing, Appellee produced evidence that he received a check for $295 as it related to the parties' child, Amanda's medical bill. He deposited the check and did not give the money to Appellant because he paid $708.11 for a delinquent joint tax bill and paid $318.34 for a delinquent gas bill. Based upon the calculations *Page 14 
presented, Appellant actually owed Appellee $218.23, but Appellee did not seek reimbursement from Appellant for that amount.
 {¶ 40} The trial court, in ruling on this issue, stated, "The Divorce Decree states, `The Defendant is to pay the medical bills incurred by the Plaintiff in the amount of $295.00 and by Amanda in the amount of $395.00 upon receipt of medical insurance checks for those debts.' The Plaintiff testified that the Defendant received the check for $295.00, but failed to pay the medical bill, requiring the Plaintiff to pay it.
 {¶ 41} "The Defendant testified that he did receive the insurance check for $295.00. He testified that he cashed the check and did not pay the provider. He testified that Amanda had been living with him fulltime while the Plaintiff was receiving child support and spousal support. He testified that he additionally had to pay a gas bill associated with the apartment building (in the amount of $318.34) which the Plaintiff was required to pay, so he considered that he did not owe the Plaintiff the $295.00. Admitted as Defendant's Exhibit B was a letter sent to Plaintiff's counsel regarding this Columbia gas bill. He testified that he did not pursue a contempt motion on this issue against the Plaintiff, because he considered that with the two issues, they were "even.""
 {¶ 42} Based on this evidence, and the fact that the $295.00 was specifically discussed in the divorce decree, the court was within its discretion to find that the offset was appropriate.
 {¶ 43} Regarding Appellant's complaint that she should have been allowed a set off in the amount of $24,302.75 pursuant to temporary orders in the original divorce action, we again cannot find error with the court's ruling. Appellant listed fourteen *Page 15 
separate expenses that she claims she should be allowed to offset from the $17,561.50 that she owed Appellee for his equity in the rental property.
 {¶ 44} The magistrate went through all fourteen items and found that "at the time the initial Temporary Order was made. . . . the parties were residing together. Effective August 29, 2003, the Defendant was ordered to pay the mortgage on the marital residence, utilities, groceries, car insurance and other living expenses of the family. Pursuant to Magistrate order filed August 24, 2004, the temporary orders were modified effective October 23, 2003. Therefore, the first Temporary Order was in effect for approximately two months."
 {¶ 45} The court found that Appellant had provided no documentation at the hearing that she was owed any money or was entitled to any offset for the specified period of time. The court further found that Appellant's claim that she was due three months of mortgage payments was not an appropriate offset, as Appellee was not required to incur both spousal support and child support arrearages and the mortgage obligation pursuant to the temporary orders. Additionally, the court found that Appellant testified that the issue of giving the minor child, Amanda, a specified amount of cash, had been resolved prior to the final hearing date and accordingly, an offset on that amount would have been inappropriate.
 {¶ 46} Regarding Appellant's claim that she was owed an offset for a negative balance in a checking account, the court found that Appellant failed to provide any documentation to support her claim. Moreover, Appellant claimed that there was a missed payment on the Rockcreek property in 2001 that should be awarded to her as *Page 16 
an offset. However, the parties were still married in 2001, and therefore the trial court appropriately determined that no offset was appropriate.
 {¶ 47} Appellant also claimed that she was owed one-half of the tax refund in the amount of $1,728.00. Appellee testified that he never received the refund because it was intercepted by the CSEA and applied to child support arrearages instead of to Appellant's one-half interest of the tax refund. The court found that while the money was given to Appellant in the form of child support, no offset was appropriate because the Agreed Entry provided for this issue to be addressed through a correction of the CSEA records. Additionally, Appellant claimed that she was entitled to an offset for school taxes and the Ohio income tax of the parties. The magistrate found that insufficient evidence was presented to determine whether the taxes due remained unpaid or if they had been paid by one of the parties. Because of this lack of proof, the court found that an offset would be inappropriate.
 {¶ 48} Next, Appellant argued that she was due an offset for a college loan acquired by her during the marriage. However, as the trial court stated, the Agreed Entry provides, "[a]ny personal debts and obligations not disclosed herein or otherwise assumed under the terms of this Entry shall be paid by the party incurring the debt or obligation." As this debt was not specifically addressed in the Agreed Entry, we find that the trial court was within its discretion to determine that this debt was an inappropriate set off.
 {¶ 49} Regarding the bonds that Appellant claims she should be entitled to as an offset, the court found that she provided insufficient evidence as to how many bonds *Page 17 
exist, but ordered that the parties should divide the bonds according to the Agreed Entry and not calculated as a set off. This order was not an abuse of discretion.
 {¶ 50} Additionally, Appellant's claim that she was entitled a set-off in the amount of $170.00 for the children's medical expenses was not supported by sufficient evidence at the hearing. Appellant provided no documentation as to these bills and therefore the court found that it was not an appropriate request for an offset at that time. The court then ordered the parties to exchange an itemization of medical bills owed for the care of the children and offset them from each other's medical expenses for children and not from the funds due to Appellee from the refinance. This order was not an abuse of discretion.
 {¶ 51} Furthermore, her claim that she was entitled to a set-off for electric and dental bills was not supported by any evidence presented at the hearing. Such a finding was not an abuse of discretion.
 {¶ 52} Finally, Appellant's claim that she was entitled to an offset in the amount of $6,571.00 for Angie's college expenses "per written agreement," was found to be an inappropriate offset because in the Agreed Entry, the parties stipulated that "[t]here are currently debts, which were incurred during the marriage which were for the college education of the adult children. No order is being made as to these college loans and it is agreed that the Domestic Court has no jurisdiction to make any order as to the payment of these loans." The Agreed Entry postdates the written agreement and therefore was not an appropriate offset. *Page 18 
 {¶ 53} Based on the trial court's written decision and explanation, we cannot find that the trial court abused its discretion in denying Appellant offsets for the amounts she requested.
 {¶ 54} We further find Appellant's claim that the trial court erred in its calculation of funds owed by Appellant to Appellee from the refinancing of the Rockcreek apartments to be without merit. The Agreed Entry, which was approved by both parties, stated:
 {¶ 55} "The one half of the equity of the defendant is defined as $207,000.00 minus the mortgage balance of $130,697.01 divided by two and then minus $20,500.00 (one half of the Thrift Savings Plan). $207,000.00-$130,697.01 /2= 38,151.50-29,500.00=$17,651.50."
 {¶ 56} "[I]t is beyond question that a duly authorized attorney may enter into an agreed judgment entry the terms of which will be binding on his or her client." McGee v. McGee, 168 Ohio App.3d 512,2006-Ohio-4417, 860 N.E.2d 1054, at ¶ 11 (internal citations omitted). Because the parties agreed to the amount of Appellee's equity in the rental properties, we cannot find that the trial court abused its discretion in ruling in Appellee's favor.
 {¶ 57} Accordingly, Appellant's third, sixth, and seventh assignments of error are overruled.
 V. {¶ 58} In Appellant's fifth assignment of error, she argues that the trial court erred by construing the language of the Agreed Entry against her because her attorney drafted the Agreed Entry. *Page 19 
 {¶ 59} Where both parties agree on the terms of the Agreed Entry in a divorce action, we find that the Agreed Entry is essentially a contract between the parties. See Klug v. Klug, 2nd Dist. No. 19369, 2003-Ohio-3042, at ¶ 13 citing In re Adams (1989),45 Ohio St.3d 219, 220, 543 N.E.2d 797. Accordingly, we also find that contract rules of interpretation apply in this scenario. Id.
 {¶ 60} A general rule of contract interpretation is that "if language in the contract is ambiguous, the court should construe the language against the drafting party." Id. citing Central Realty Co. v.Clutter (1980), 62 Ohio St.2d 411, 413, 406 N.E.2d 515. "However, when interpreting a contract, the court must first examine the plain language of the contract for evidence of the parties' intent." Id. citingGottlieb Sons, Inc. v. Hanover Ins. Co. (April 21, 1994), Cuyahoga App. No. 64559. If the contract language is ambiguous, then the court should consider extrinsic evidence to determine the parties' intent and ambiguities should be construed against the drafter.
 {¶ 61} In the present case, there are no ambiguities in the Agreed Entry regarding the money owed to Appellee from the refinancing of the rental property. The Entry specifically states that Appellant owes Appellee $17,561.50. Accordingly, the Agreed Entry was not construed against the drafter, but was enforced by the plain language of the contract.
 {¶ 62} Accordingly, Appellant's fifth assignment of error is overruled. *Page 20 
 {¶ 63} For the foregoing reasons, we overrule Appellant's assignments of error. The judgment of the Fairfield County Court of Common Pleas, Domestic Relations Division, is affirmed. By: Delaney, J. Gwin, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Fairfield County Court of Common Pleas, Domestic Relations Division is affirmed. Costs assessed to Appellant. *Page 1