OPINION *Page 2 
{¶ 1} Appellant Louis Bremer and Appelle Connie Bremer were married on June 20, 1981. While married, the parties had three children, all of whom are now adults, and adopted one minor child, Madeline, who was born October 23, 1998.
 {¶ 2} On November 15, 2006, Appellee, filed a complaint for divorce against Appellant. On November 30, 2006, Appellant filed an answer and counterclaim for divorce. On December 27, 2006, the parties filed an Agreed Magistrate's Order Regarding Temporary Orders, which stated that the parties would maintain the "status quo" in terms of the payment of marital obligations.
 {¶ 3} On February 12, 2007, Appellee filed a motion for contempt, claiming that Appellant violated the court's protective order by excessive spending. The parties filed an Agreed Entry resolving the contempt motion on May 30, 2007. On September 25, 2007, Appellee filed a second motion for contempt, alleging that Appellant violated the May 30, 2007, Agreed Entry.
 {¶ 4} On October 12, 2007, the second motion for contempt came on for a Show Cause hearing. The trial court issued a judgment entry on February 29, 2008, finding Appellant in contempt of court. Appellant requested the issuance of findings of fact and conclusions of law, and on March 18, 2008, the court issued a judgment entry requiring each party to submit proposed findings of fact and conclusions of law within five days. Appellant filed his proposed findings of fact and conclusions of law on March 25, 2008 and Appellee filed hers on March 24, 2008.
 {¶ 5} The trial court filed a judgment entry on April 11, 2008, finding Appellant in contempt of court and issued findings of fact and conclusions of law. *Page 3 
 {¶ 6} Appellant raises two Assignments of Error:
 {¶ 7} "I. THE TRIAL COURT ERRED AND ABUSED ITS' [SIC] DISCRETION BY FINDING APPELLANT TO BE IN CONTEMPT OF COURT WHEN THE ORDER UPON WHICH THE FINDING WAS MADE WAS VAGUE AND AMBIGUOUS (JUDGMENT ENTRIES DATED FEBRUARY 29, 2008 AND APRIL 11, 2008).
 {¶ 8} "II. THE TRIAL COURT'S FINDING OF CONTEMPT OF COURT AGAINST APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE (JUDGMENT ENTRIES DATED FEBRUARY 29, 2008 AND APRIL 11, 2008)."
 I. II. {¶ 9} As both of Appellant's assignments of address the trial court's finding of contempt, we will address them together.
 {¶ 10} Our standard of review regarding a finding of contempt is limited to a determination of whether the trial court abused its discretion. Wadian v. Wadian, 5th Dist. No. 2007 CA 00125, 2008-Ohio-5009, ¶ 12 citing In re Mittas (Aug. 6, 1994), 5th Dist. No. 1994 CA 00053. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140, 1142.
 {¶ 11} There are three elements in a civil contempt: (1) a prior order of the court; (2) proper notice to the alleged contemptnor; and (3) failure to abide by the court order. Rossen v. Rossen (1964),2 Ohio App.2d 381, 208 N.E.2d 764. "The punishment for civil contempt is remedial or coercive in nature and for the benefit of the complainant, i.e., conditional fines and prison sentences." Porter v. Porter, 4th Dist. No. 07CA3178, *Page 4 2008-Ohio-5566, at ¶ 30. Generally, in contempt proceedings, a trial court may compensate the complainant for losses. Id. citingCincinnati v. Cincinnati District Council 51 (1973), 35 Ohio St.2d 197,207, 299 N.E.2d 686, 694.
 {¶ 12} The burden of proof in a civil contempt action is proof by clear and convincing evidence. Jarvis v. Kunzer, 5th
Dist. No. 07CA72, 2008-Ohio-2974. The determination of "clear and convincing evidence" is within the discretion of the trier of fact. We will not disturb the trial court's decision as against the manifest weight of the evidence if the decision is supported by some competent, credible evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279.
 {¶ 13} The evidence introduced at the hearing supports the trial court's determination that Appellant was in contempt for violating the May 30, 2007, entry. The entry stated, in pertinent part:
 {¶ 14} "To resolve this matter without a hearing, Defendant agrees to separate his personal expenses from the business. Defendant agrees to stop making payments for personal expenses from the business, and to stop using business charge cards or the business line of credit for personal expenses. * * * *
 {¶ 15} "Additionally, while Defendant needs to spend reasonable amounts to maintain his lifestyle, he agrees to abide by a monthly budget draw of $5200 for personal expenses, so that the assets of the marriage are not dissipated. This includes expenses previously paid by the business. Defendant also agrees to terminate automatic withdrawals of his bills from the business account. Further, Plaintiff agrees to abide by a monthly draw of no more than $6,500 until the business is sold. This does *Page 5 
not include bills already paid through the business, i.e. mortgage, health insurance, life insurance, cell phones, gasoline.* * * *
 {¶ 16} "Defendant shall pay child support of $1,160 per month plus processing charge and some may be taken as a draw until the business is sold."
 {¶ 17} This entry was agreed upon by the parties.
 {¶ 18} At the hearing, Appellee testified that between the months of May and August, 2007, Appellant spent in excess of $10,000.00 more than his agreed upon draws. Specifically, in May, Appellant spent $2,200 in excess of his $5,200 draw. In June, he had personal expenses automatically deducted as well as taking a draw of $4,400 and $88. He had automatic monthly withdrawals in the amount of $1,835. In July, he took a draw of $7,405 as well as some miscellaneous expenses. In August, he took $9,206 as a draw. The total overage amounted to $10,407.00, according to Appellee.
 {¶ 19} Appellant testified that he spent the amounts Appellee listed, but stated that he did not believe he was in violation of the court order. He testified that the automatic payments were not stopped because he believed that they were family expenses that could be paid out of the account. He stated that the only personal expense that he removed was his OnStar payment in July, 2007. He further testified that he continued to use a business credit card for personal expenses.
 {¶ 20} The court, in rendering judgment after both parties submitted proposed findings of fact and conclusions of law, set forth the following pertinent findings of fact:
 {¶ 21} "3. In pertinent part, the Agreed Entry dated May 30, 2007, provides: *Page 6 
 {¶ 22} "a. Defendant agrees to separate his "personal expenses" from the business. Defendant agrees to stop making payment for "personal expenses" from the business, and to stop using business charge cards or the business line of credit for "personal expenses."
 {¶ 23} "b. . . . he agrees to abide by a monthly draw of $5200.00 for "personal expenses," so that the assets of the marriage are not dissipated. This includes expenses previously paid by the business.
 {¶ 24} "c. Defendant also agrees to terminate automatic withdrawals of "his bills" form [sic] the business account.
 {¶ 25} "4. The court finds that the defendant did not separate his "personal expenses" from the business.
 {¶ 26} "5. The defendant exceeded his monthly draws.
 {¶ 27} "6. The defendant continued to expend business funds for "family business expenses."
 {¶ 28} "7. The agreement specifically states that the $5200.00 draw specifically includes the expenses previously paid by the business. (Page two, second paragraph, of May 30, 2007 agreement)
 {¶ 29} "8. The clear intent of the agreement was to separate his personal and business expenses financial dealings, which he failed to honor."
 {¶ 30} Based upon the above, we find the trial court did not abuse its discretion in finding Appellant was in contempt of the court's prior order. There was competent, credible evidence in support of the trial court's judgment as Appellant admitted that he spent the amounts complained of. *Page 7 
 {¶ 31} With respect to Appellant's claim of ambiguity of the Agreed Entry, we disagree. In the present case, the parties had an Agreed Entry Resolving Plaintiff's Motion For Contempt, meaning the parties agreed upon the terms of the Entry issued by the court. Sowald Morganstern Domestic Relations Law, 4th Ed. Thomson West Publishing (2002), Section 9:48. Where ambiguity is complained of and where the parties dispute the meaning of clauses in the agreement, it is the duty of the court to examine the contract and determine whether the ambiguity exists. If an ambiguity does exist, the court has the duty and the power to clarify and interpret such clauses by considering the intent of the parties as well as the fairness of the agreement. Id., citations omitted.
 {¶ 32} If ambiguity exists as to the provisions of an agreement in a domestic case, or if there is a conflict as to interpretation of the provisions of such an agreement, the court may take testimony regarding the parties' "intention to assist in construing the language of a separation agreement. The court may consider parol evidence." Id., citations omitted. The court may also interpret and enforce its property division orders when later disagreements arise. Id. See also,Kincaid v. Kincaid (1997), 117 Ohio App.3d 148, 690 N.E.2d 47.
 {¶ 33} "[I]t is beyond question that a duly authorized attorney may enter into an agreed judgment entry the terms of which will be binding on his or her client." McGee v. McGee, 168 Ohio App.3d 512,2006-Ohio-4417, 860 N.E.2d 1054, at ¶ 11 (internal citations omitted). Where both parties agree on the terms of the Agreed Entry in a divorce action, we find that the Agreed Entry is essentially a contract between the parties. See Klug v. Klug, 2nd Dist. No. 19369, 2003-Ohio-3042, at ¶ 13 citing In re *Page 8 Adams (1989), 45 Ohio St.3d 219, 220, 543 N.E.2d 797. Accordingly, we also find that contract rules of interpretation apply in this scenario. Id.
 {¶ 34} A general rule of contract interpretation is that "if language in the contract is ambiguous, the court should construe the language against the drafting party." Id. citing Central Realty Co. v.Clutter (1980), 62 Ohio St.2d 411, 413, 406 N.E.2d 515. "However, when interpreting a contract, the court must first examine the plain language of the contract for evidence of the parties' intent." Id. citingGottlieb Sons, Inc. v. Hanover Ins. Co. (April 21, 1994), Cuyahoga App. No. 64559. If the contract language is ambiguous, then the court should consider extrinsic evidence to determine the parties' intent and ambiguities should be construed against the drafter.
 {¶ 35} In the present case, there are no ambiguities in the Agreed Entry regarding the settlement of the first contempt action. The parties agreed that Appellant would cease to use the bank account to pay "personal expenses" and that he would cease having automatic payments deducted from the account. However, automatic payments for three different life insurance policies, health insurance, disability insurance, a student loan payment, a Visa payment, and car insurance totaling over $1,800 a month were still automatically withdrawn from the account.
 {¶ 36} Appellant did not dispute any of the amounts complained of; he merely disagreed that he was prohibited from spending the money by virtue of the court's order.
 {¶ 37} As the trial court stated, the "Agreed Entry provided proper notice to Dr. Bremer. His counsel participated in it's [sic] drafting and he signed it." *Page 9 
 {¶ 38} The Agreed Entry made no exceptions for "family expenses." The trial court correctly concluded that the "$5200.00 draw includes expenses previously paid by the business. (Page two, second paragraph, of May 30, 2007 agreement)."
 {¶ 39} We do not find the May 30, 2007, Agreed Entry to be ambiguous, and find that Appellee proved, by clear and convincing evidence that Appellant was in contempt of court for failing to abide by the May 30, 2007 Entry. Accordingly, Appellant's first and second assignments of error are overruled.
 {¶ 40} For the foregoing reasons, we overrule Appellant's assignments of error. The judgment of the Licking County Court of Common Pleas, Domestic Relations Division, is affirmed.
 Delaney, J. Gwin, P.J. and Farmer, J. concur. *Page 10 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas, Domestic Relations Division, is affirmed. Costs assessed to Appellant. *Page 1