OPINION *Page 2 
{¶ 1} Defendant-Appellant, Patricia Lawson, ("Appellant") appeals the February 1, 2008, Judgment Entry Decree of Divorce entered by the Licking County Court of Common Pleas, Domestic Relations Division, which granted the parties a divorce, allocated parental rights and responsibilities, and divided marital assets and debts. Appellant also appeals the March 4, 2008, Judgment Entry denying her motion for a new trial. Plaintiff-Appellee is Brian Lawson ("Appellee").
 STATEMENT OF THE CASE AND FACTS {¶ 2} Appellee and Appellant were married on September 18, 1993, in Columbus, Ohio. Two children were born as a result of the marriage, Garrett (born 10/19/1988) and Gabriel (born 3/14/2003). Appellant and Appellee are joint owners of real property located at 51 Roland Court, Pataskala, Ohio. Appellee filed a complaint for divorce on January 17, 2006. Appellant filed an answer and a counterclaim seeking a divorce, division of property and custody of the two children. The parties stipulated that they are incompatible.
 {¶ 3} The court appointed Lora Cleary, Attorney at Law, as Guardian ad Litem, to the two minor children. Dr. John Tarpey, a licensed clinical psychologist, was requested to complete a psychological evaluation and custody evaluation of the parties.
 {¶ 4} The parties were unable to resolve the issues in their case and the case was brought to trial before the trial court in September, 2007. The trial court, after hearing the evidence presented by the parties at trial, granted a decree of divorce on the grounds of incompatibility and granted Appellee custody of the two children, ordered fixed child support, companionship, and divided the property. *Page 3 
 {¶ 5} The court also granted Appellee's motion for contempt based on the Appellant's failure to comply with temporary orders relating to companionship and debts. The court denied Appellant's motion for contempt for non-payment of mortgage and expenses. The court further denied Appellant's motion for a new trial.
 {¶ 6} Appellant raises eleven Assignments of Error:
 {¶ 7} "I. THE TRIAL COURT ERRED IN DENYING THE REQUEST FOR A FINDING OF FACT PURSUANT TO RULE 52, OHIO RULES OF CIVIL PROCEDURE, ON BASIS OF TIMELINESS AND FURTHER ABUSED ITS DISCRETION IF THE RULING WAS CORRECT, DENYING APPELLANT TO FILE LATE, PURSUANT TO RULE 6(B)(2), OHIO RULES OF CIVIL PROCEDURE.
 {¶ 8} "II. THE TRIAL COURT ERRED BY PERMITTING THE GUARDIAN AD LITEM TO ACT AS ADVOCATE WITHOUT FURNISHING EITHER THE COURT OR THE PARTIES WITH A GUARDIAN AD LITEM'S REPORT AND RECOMMENDATION BEFORE TRIAL AND THEN IN PERMITTING THE GUARDIAN AD LITEM TO ARGUE URGING THAT PLAINTIFF-APPELLEE BE FOUND THE PROPER CUSTODIAL PARENT, SUCH ACTION DEPRIVING DEFENDANT-APPELLANT OF A FUNDAMENTALLY FAIR TRIAL IN VIOLATION OF THE 5TH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATED AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.
 {¶ 9} "III. THE TRIAL COURT ERRED WHEN IT FAILED TO MAKE A RECORD OF THE TRIAL PROCEEDINGS, THUS DENYING DEFENDANT-APPELLANT OF A MEANINGFUL APPEAL AS PROVIDED IN ARTICLE IV, SECTION 3 OF THE OHIO CONSTITUTION, SECTION 2505.03, OHIO REVISED CODE AND IN *Page 4 RE SANITARY DIST. (1954), 161 OHIO ST.259, AND FURTHER CONSTITUTES DENIAL OF DUE PROCESS AND EQUAL PROTECTION OF LAW, JUSTIFYING A NEW TRIAL, PURSUANT TO RULE 59(A)(1)(7)(9), OHIO RULES OF CIVIL PROCEDURE.
 {¶ 10} "IV. THE TRIAL COURT ERRED IN RULING THAT DEFENDANT-APPELLANT FAILED TO ADEQUATELY TRACE HER INHERITANCE INTO REAL PROPERTY PURCHASED IN BOTH NAMES.
 {¶ 11} "V. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FAILED TO FIND PLAINTIFF-APPELLEE GUILTY OF CONTEMPT FOR FAILING TO PAY 40% OF THE MORTGAGE PAYMENTS AND EXPENSES, WHEN PLAINTIFF-APPELLEE ADMITTED NON-PAYMENT OF HIS SHARE FROM APRIL THROUGH OCTOBER, 2007.
 {¶ 12} "VI. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT AWARDED CUSTODY OF THE TWO MINOR CHILDREN TO THE PLAINTIFF-APPELLEE, CONTRARY TO THE RECORD INDICATING PLAINTIFF-APPELLEE WAS THE BETTER PARENT SOLELY BECAUSE OF AN IMPRESSION DEFENDANT-APPELLANT WOULD NOT FOSTER, HONOR AND FACILITATE COURT-APPROVED COMPANIONSHIP, AND THE INADMISSIBLE OPINION OF A PSYCHOLOGIST DEFENDANT-APPELLANT WAS PARANOID WHICH WOULD POSSIBLY AFFECT THE CHILDREN, WHILE IGNORING PLAINTIFF-APPELLEE'S ADMISSION HE DID NOT MAKE HIS PORTION OF THE MORTGAGE PAYMENTS FOR MANY MONTHS, AS WELL AS EVIDENCE DEFENDANT-APPELLANT WAS *Page 5 
THE PRIMARY CAREGIVER, WHO WAS ADMITTEDLY A GOOD AND CARING MOTHER.
 {¶ 13} "VII. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN AWARDING CUSTODY TO THE PLAINTIFF-APPELLEE, SUCH AWARD BEING AGAINST THE WEIGHT OF THE EVIDENCE.
 {¶ 14} "VIII. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ORDERING DEFENDANT-APPELLANT TO REFINANCE THE MORTGAGE AND EQUITY LOAN AND PAY $53,601.00 WITHIN SIX (6) MONTHS OR SELL THE REAL ESTATE AND SPLIT THE EQUITY, WHILE LEAVING DEFENDANT-APPELLANT WITH THE OBLIGATION TO PAY $2,451.00 IN FIRST MORTGAGE AND EQUITY LOAN PAYMENTS EACH MONTH, PLUS A $1,738.00 CHILD SUPPORT ORDER WHICH IS BEYOND DEFENDANT'S ABILITY TO PAY, PARTICULARLY WHEN THE COURT MADE NO FINDING OR ORDER TO PAY DELINQUENT MORTGAGE AND EXPENSE PAYMENTS.
 {¶ 15} "IX. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ALLOCATING DEBT PAYMENTS, IN EQUALIZING ACCOUNTS, IN IMPOSING FINES FOR CONTEMPT WITHOUT CONSIDERATION OF DEFENDANT-APPELLANT'S ABILITY TO COMPLY OR THE REASONABLENESS OF ATTORNEY'S FEES.
 {¶ 16} "X. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FIXING CHILD SUPPORT BASED ON THE CHILD SUPPORT GUIDELINES AND NOT GRANTING DEVIATION BASED ON ITS ORDER REGARDING PAYMENT OF MORTGAGES ON REAL PROPERTY WHICH COULD NOT BE QUICKLY *Page 6 
LIQUIDATED, REFINANCING BEING IMPOSSIBLE BECAUSE OF THE CHILD SUPPORT ORDER.
 {¶ 17} "XI. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN OVERRULING DEFENDANT-APPELLANT'S MOTION FOR NEW TRIAL."
 I. {¶ 18} In her first assignment of error, Appellant argues that the trial court abused its discretion in denying Appellant's request for a finding of fact pursuant to Civil Rule 52 on the basis of untimeliness. We disagree.
 {¶ 19} Absent an abuse of discretion, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. An abuse of discretion connotes more than a mere error in law or judgment; it implies an arbitrary, unreasonable, or unconscionable attitude on the part of the trial court. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.
 {¶ 20} Ohio Rule of Civil Procedure 52 states, in pertinent part:
 {¶ 21} "When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ. R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law." Here, the Judgment Entry Decree of Divorce was filed on February 1, 2008. Appellant did not file her request for findings of fact until February 14, 2008. Because Appellant's motion was *Page 7 
filed past the seven days of the trial court's entry of judgment following its decision, the trial court properly overruled the motion as untimely.
 {¶ 22} We find Appellant's argument under Civ. R. 6(B) to be unpersuasive. The requirements of Civ. R. 6(B) require a party to demonstrate excusable neglect if it fails to file for enlargement of time "before the expiration of the period originally prescribed." Whether a party has demonstrated excusable neglect is within the discretion of the trial court and is to be decided upon the facts of each individual case. Markan v. Sawchyn (1987), 36 Ohio App.3d 136,521 N.E.2d 824.
 {¶ 23} The trial court, in this case, determined that the facts and circumstances surrounding Appellant's untimely request did not constitute excusable neglect. Moreover, when reviewing the Judgment Entry Decree of Divorce, it is apparent that the Judgment Entry does contain Findings of Fact and Conclusions of Law as related to the orders therein.
 {¶ 24} Accordingly, Appellant's first assignment of error is overruled.
 II. {¶ 25} In her second assignment of error, Appellant argues that the trial court abused its discretion by permitting the guardian ad litem to advocate in the best interests of the children and recommend that the children be placed with Appellee without providing a written report and recommendation prior to trial.
 {¶ 26} Ohio Rev. Code 3109.04(B)(2)(a) allows a trial court to appoint a guardian ad litem for minor children in cases determining the allocation of the parental rights and responsibilities for the care of the children. A guardian ad litem acts in an investigative capacity on behalf of the court at the court's request. See Lawrence v.Lawrence (April *Page 8 
13, 2001), 3rd Dist. No. 1-2000-74, 2001-Ohio-2190. Under R.C. 3109.04(B)(1), the court can interview the minor children in a divorce action, in determining what actions are in the best interest of the child. A review of the record does not indicate that either party requested the minor children to be interviewed pursuant to R.C. 3109.04(B) and there is no indication that any such interviews were conducted in this case.
 {¶ 27} A guardian ad litem may also conduct further investigations in divorce proceedings in determining the best interests of the children. Ohio Civ. R. 75(D), states, in pertinent part:
 {¶ 28} "On the filing of a complaint for divorce, annulment, or legal separation, where minor children are involved, or on the filing of a motion for the modification of a decree allocating parental rights and responsibilities for the care of children, the court may cause an investigation to be made as to the character, family relations, past conduct, earning ability, and financial worth of the parties to the action. The report of the investigation shall be made available to either party or their counsel of record upon written request not less than seven days before trial. The report shall be signed by the investigator and the investigator shall be subject to cross-examination by either party concerning the contents of the report. The court may tax as costs all or any part of the expenses for each investigation."
 {¶ 29} Additionally, Ohio Revised Code 3109.04(C) states:
 {¶ 30} "Prior to trial, the court may cause an investigation to be made as to the character, family relations, past conduct, earning ability, and financial worth of each parent and may order the parents and their minor children to submit to medical, psychological, and psychiatric examinations. The report of the investigation and *Page 9 
examinations shall be made available to either parent or the parent's counsel of record not less than five days before trial, upon written request. The report shall be signed by the investigator, and the investigator shall be subject to cross-examination by either parent concerning the contents of the report. The court may tax as costs all or any part of the expenses for each investigation."
 {¶ 31} A review of the record shows that no such written request for the guardian ad litem's report was made by either party in this case. Moreover, the guardian was present at trial and was subject to cross-examination, but was not called to the stand by either party. Additionally, at trial, the parties stipulated to the timing of the submission of the report of the guardian ad litem.[1]
 {¶ 32} Accordingly, we cannot say that the trial court abused its discretion, nor did it deny Appellant the right to a fair trial.
 {¶ 33} Appellant's second assignment of error is overruled.
 III. {¶ 34} Appellant argues, in her third assignment of error, that the trial court abused its discretion in failing to record the trial proceedings and that she was denied a meaningful appeal because of this. Again, we disagree.
 {¶ 35} This was a trial before a judge in domestic court. Therefore, the Criminal Rules, as cited by Appellant, do not apply.[2]
 {¶ 36} The Local Rules of Licking County provide guidance as to when a recording of trial proceedings in domestic court will be made. Licking County Local Rule 32 provides, in pertinent part: *Page 10 
 {¶ 37} "All record request for hearings or trials before the Judge must be received more than three (3) working days before the trial/hearing date otherwise a record will be deemed to have been waived. No record requests are necessary for any hearing or trial before the Magistrate.
 {¶ 38} "All record requests must be in writing and clearly defined as `Request for Record.' A file stamped copy must be served on the Court Recorder. Failure to do so will constitute a waiver of a request for a record.
 {¶ 39} "Any record request received 3 days or less before the trial/hearing date will be denied unless the Court is advised by the Court Recorder that a record could be made without interrupting other duties of the Court Recorder."
 {¶ 40} The record before us shows that no such request in compliance with Loc. R. 32 was made. Accordingly, the trial court did not err in not recording the trial proceedings.
 {¶ 41} In lieu of a transcript of proceedings, occasionally parties will agree, pursuant to App. R. 9(C), to submit a statement of the evidence or proceedings. Appellate Rule 9(C) provides:
 {¶ 42} "If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement shall be served on the appellee no later than twenty days prior to the time for transmission of the record pursuant to App. R. 10, who may serve objections or propose amendments to the statement within ten days after service. The statement and any objections or proposed amendments shall be forthwith submitted to the trial court *Page 11 
for settlement and approval. The trial court shall act prior to the time for transmission of the record pursuant to App. R. 10, and, as settled and approved, the statement shall be included by the clerk of the trial court in the record on appeal."
 {¶ 43} The parties submitted a 9(C) statement and it was made a part of this record. Appellant objects to the submission of this statement, claiming that it violated her right to a fair trial. Appellant has not, however, cited any law in support of this claim.
 {¶ 44} The Ohio Supreme Court has, in fact, declared App. R. 9(C) a viable alternative in criminal cases as "an available, reliable alternative to an appellant unable to bear the cost of a transcript."State ex rel. Motley v. Capers (1986), 23 Ohio St.3d 56, 58,491 N.E.2d 311, 313.
 {¶ 45} Moreover, the Eighth District Court of Appeals has stated, "By the enactment of App. R. 9(C) and (E), it is no longer a viable argument in Ohio that a person's constitutional right to an appeal is denied by the unavailability of the transcript of proceedings. The rule provides the mechanism by which a party may place in the record those facts that would help to effectuate his appeal * * *.
 {¶ 46} "* * *
 {¶ 47} "Appellant's argument that there is no alternate means available to present a fair and just appeal when a transcript is unavailable has no legal foundation, and therefore, is not well taken."State v. Kennedy (Dec. 9, 1993), Cuyahoga App. No. 64065. We similarly do not find that Appellant was denied her right to a fair trial based on the absence of a transcript.
 {¶ 48} Appellant's third assignment of error is overruled. *Page 12 
 IV. {¶ 49} In her fourth assignment of error, Appellant argues that the trial court erred in ruling that Appellant failed to adequately trace her inheritance into real property purchased in both names.
 {¶ 50} A trial court has broad discretion in dividing marital assets and liabilities in a divorce action. Cherry v. Cherry (1981),66 Ohio St.2d 348, 421 N.E.2d 1293; Bugos v. Bugos (Oct. 15, 1999), 11th Dist. No. 98-T-0141. Accordingly, an appellate court is limited to a determination of whether, under the totality of the circumstances, the trial court abused its discretion in dividing the property. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131,541 N.E.2d 597, 599. The term "abuse of discretion" implies more than just an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, 1142 .
 {¶ 51} Ohio Revised Code 3105.171(A)(6)(a)(i) defines separate property as "all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
 {¶ 52} "(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage."
 {¶ 53} However, "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." (Emphasis added.) R.C. 3105.171(A)(6)(b). *Page 13 
 {¶ 54} Therefore, traceability is central when determining whether separate property has "lost its separate character" after being commingled with marital property. Peck v. Peck (1994),96 Ohio App.3d 731, 734, 645 N.E.2d 1300, 1302. The party seeking to establish an asset as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. Peck at 734.
 {¶ 55} In the present case, Appellant provided minimal evidence tracing her inheritance to the marital residence and establishing that the money was her separate property. The only evidence appearing in the 9(C) statement presented by Appellant regarding the inheritance was when Appellant stated "my estate lawyer has estate information."[3]
Appellant's attorney cross-examined Appellee regarding the inheritance, but adduced insufficient evidence to trace the alleged separate property. Appellant presented no documentation or evidence regarding the tracing of the inheritance. Accordingly, the trial court was within its discretion to determine that, due to lack of evidence, Appellant failed to trace her inheritance as separate property.
 {¶ 56} Appellant cites our opinion in Black v. Black (Nov. 4, 1996), 5th Dist. No. 1996CA00052 in support of her argument. InBlack, we discussed the six factors to be considered when determining whether transmutation of property has occurred. As Appellant presented no evidence relating to these factors at trial, Black is not implicated.[4]
 {¶ 57} Appellant's fourth assignment of error is overruled. *Page 14 
 V. {¶ 58} In her fifth assignment of error, Appellant argues that the trial court abused its discretion when it did not find Appellee to be in contempt for failing to pay 40 percent of the mortgage payments and expenses, even though he admitted to nonpayment from April to October, 2007. Appellant filed a motion for contempt on May 14, 2007.
 {¶ 59} The record reflects that Appellee did not pay the 40 percent of the mortgage payments pursuant to Temporary Orders issued on May 24, 2006, due to an agreement reached between the parties at a status conference. Appellee testified that when this agreement was later reduced to writing, Appellant refused to sign the agreement.[5]
Appellant testified and denied the existence of an agreement modifying the temporary orders relieving Appellee of his responsibility to pay the mortgage payment and also denied any knowledge of a written agreed entry modifying the temporary orders regarding the mortgage payment.[6]
 {¶ 60} The trial court considered the motion and stated that Appellant failed to meet her burden of proof regarding the motion. Our standard of review regarding a finding of contempt is limited to a determination of whether the trial court abused its discretion. Wadian v. Wadian, 5th Dist. No. 2007 CA 00125, 2008-Ohio-5009, ¶ 12 citingIn re Mittas (Aug. 6, 1994), 5th Dist. No. 1994 CA 00053. As we previously stated, in order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, *Page 15 
1142. As the trial court was in the best position to judge the credibility of the parties and to determine whether Appellee violated a court order, we cannot find that the court abused its discretion in denying Appellant's motion.
 {¶ 61} Appellant's fifth assignment of error is overruled.
 VI VII {¶ 62} In her sixth and seventh assignments of error, Appellant argues that the trial court abused its discretion in awarding custody of the two minor children to Appellee.
 {¶ 63} We have previously determined that "because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence and such decision must not be reversed absent an abuse of discretion."Schaefer v. Schaefer, 5th Dist. No. No. 2007CA00283,2008-Ohio-3960, at ¶ 17 citing Davis v. Flickinger (1997),77 Ohio St.3d 415, 418, 674 N.E.2d 1159, 1162 (Citation omitted). In Bechtol v.Bechtol (1990), 49 Ohio St.3d 21, 23, 550 N.E.2d 178, 180, the Ohio Supreme Court held, "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." Id. at syllabus. The reason for this standard of review "is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." Davis, supra at 418. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility *Page 16 
of witnesses and evidence is not." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 81, 461 N.E.2d 1273, 1277.
 {¶ 64} When determining whether the trial court properly allocated parental rights and responsibilities, the main concern is the best interest of the child. Ohio Revised Code 3109.04(F)(1) sets forth the factors a trial court must consider when determining the best interests of the child. Those factors are:
 {¶ 65} "In determining the best interest of a child pursuant to this section, * * *, the court shall consider all relevant factors, including, but not limited to: (a) The wishes of the child's parents regarding the child's care; (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court; (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (d) The child's adjustment to the child's home, school, and community; (e) The mental and physical health of all persons involved in the situation; (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights; * * * (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state." *Page 17 
 {¶ 66} After reviewing the 9(C) statement and evidence in the record, we find that the trial court's decision was supported by competent, credible evidence and that the court's decision to award custody to Appellee was proper.
 {¶ 67} Dr. Tarpey, clinical psychologist, conducted interviews and evaluations of Appellant and Appellee. His evaluation of Appellee was that he was a "pretty normal functioning individual" and he noted no "significant problems" with Appellee. Regarding his evaluation of Appellant, he was concerned about her "difficulty cognitively and her perceptions and mistrust/suspicion of people in her life. A general way of describing her symptoms was paranoia, specifically related to adult relations."
 {¶ 68} Additionally, Dr. Tarpey was aware that Appellee had not seen his children for several months because of Appellant's conduct and that he continually inquired as to his parenting time with the children as well as their whereabouts and well being. Appellant would not respond to Appellee's inquiries during that time period.
 {¶ 69} Testimony was also adduced that Appellant has "judgment issues, cognitive issues, decision making issues." Appellant would engage in "[s]pitting, name calling of Dad in front of children — detrimental to the children." Dr. Tarpey's report indicated that "over time, parent with psychological problems could negatively impact the children. Page 7 of the report was referenced stating that Court `forced it' that the father would get visitation. Equally inappropriate for either to denigrate other in front of children. There needs to be a filter. She needs to do counseling."
 {¶ 70} Appellee testified that Appellant refused to let him see the boys in June, 2007. She refused to let Appellee take the boys home on days designated by the court as Appellee's days with the children. Appellant failed to communicate with Appellee *Page 18 
about medical treatments for the children, did not inform Appellee where the youngest child attended daycare, and did not inform Appellee of older child's location after school. Additionally, Appellant would refuse to return children's clothing to Appellee, forcing him to buy new clothing when the children would be with him. He testified that from the time Appellant asked him to leave the residence, he had no contact with the boys from January 26, 2006, to June 2, 2006. Appellee would call to speak to the boys, and all except one time, she denied letting him speak to his children.
 {¶ 71} Appellee testified that when they would exchange custody of the children, Appellant was "constantly belligerent. She said bad things about me in front of the boys. She had physical contact with me. Yanked son out of car. She spit on me and the car. Similar things happen at baseball games and football practices." He further testified that she has been violent, that she slapped Appellant on one occasion and threw him up against a wall and tried to choke him on another occasion.
 {¶ 72} Appellant has prior felony conviction from January, 2005, for domestic violence and a conviction for a violation of a civil protection order as well. She testified that she had knowingly denied Appellee companionship with his minor children and that such denial was in contravention of the Temporary Orders in this case.
 {¶ 73} Lora Cleary, the guardian ad litem, reported that the Appellant had willfully denied Appellee's court ordered right to parenting time for six weeks prior to the final hearing in this matter. Appellant did not file for emergency custody and did not assert an emergency as the reason for this denial of parenting time. *Page 19 
 {¶ 74} Ms. Clearly observed in her report that "frequent confrontation define the relationship between Patricia Lawson and Brian Lawson. Unfortunately, Garrett and Gabe are frequently caught in the middle.
 {¶ 75} * * *
 {¶ 76} "As indicated by Dr. Tarpey, significant issues exist relating to the mother's psychological status. Other than the psychological report, the mother's psychological issues have manifested themselves with court involvement in the form of CSPOs, violation of one of the orders resulting in a felony conviction, her exclusion from her child's school as a result of the CSPOs and a tenuous relationship with Garrett's teachers.
 {¶ 77} "Of further serious concern was the mother's denial of the father's parenting time from July 27, 2007 until the date of the final hearing in September of 2007. Not only was this denial indicative of the mother's apparent lack of respect for the children's relationship with their father, but also indicative of her apparent lack of respect for court orders. That the denial occurred blatantly on the eve of trial was even more disconcerting.
 {¶ 78} "Fortunately, the father's psychological adjustment is more stable. He does not have a criminal record, has positive and workable relationships with the school and is able to meet the needs of the children without continuous conflict defining his adult relationships.
 {¶ 79} "In the opinion of the guardian ad litem, the first priority for the children should be the reduction of conflict they experience as a result of the dysfunctional relationship between their parents." *Page 20 
 {¶ 80} As a result of her investigation, the guardian ad litem stated that it was in the best interests of the minor children to allocate parental rights and responsibilities to Appellee, and that Appellant have parenting time on every Thursday through Friday and alternating weekends. She also recommended that Appellant engage in counseling as recommended by Dr. Tarpey.
 {¶ 81} The trial court, in its judgment entry, considered all of the testimony and the statutory factors determined that in the best interests of the child, Appellee would be the better custodial parent. Although recognizing that Appellant was responsible for most of the medical and educational care of the minor children for several years, based upon the evidence presented at trial, we cannot conclude that the trial court abused its discretion in awarding custody to Appellee.
 {¶ 82} Appellant's sixth and seventh assignments of error are overruled.
 VIII., IX., X. {¶ 83} In her eighth, ninth, and tenth assignments of error, Appellant argues that the trial court abused its discretion in dividing assets and in ordering Appellant to pay child support, fines, and attorney's fees.[7] Specifically, Appellant claims the trial court erred in ordering her to refinance the marital home and equity loan and pay Appellee $53,601.00 within six months or sell the real estate and split the equity. Appellant also claims that the court abused its discretion in ordering Appellant to pay $2,451.00 a month in mortgage payments, $1,738.00 a month in child support, and in ordering Appellant to pay attorney's fees related to contempt proceedings.
 {¶ 84} Appellant cites no law supporting her contention that the trial court erred in its order regarding the division of assets and in ordering payment of attorney fees *Page 21 
related to the contempt charge. "An appellant bears the burden of affirmatively demonstrating error on appeal." Hutchinson v.Henderson, 9th Dist. No. 20862, 2002-Ohio-4521, at ¶ 39. App. R. 16(A)(7) requires that the brief of an appellant include:
 {¶ 85} "[A]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Appellant has not set forth a single, legal authority to support her assertion that the trial court erred in dividing assets and debts, or in ordering Appellant to pay fines for the contempt finding or attorney's fees. SeeIn re Spence (Mar. 28, 2001), 9th Dist. No. 99CA007522, at 12 (declining to address assignment of error where appellant failed to cite law applicable to the issue under review).
 {¶ 86} Under an independent review, however, reviewing the facts as preserved in the record, we cannot find error with the trial court's division of assets and debts, or in ordering Appellant to pay attorney's fees related to the contempt finding, or in the order of child support.
 {¶ 87} The division of real estate and assets will not be disturbed absent an abuse of discretion. Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 131, 541 N.E.2d 597. Both parties requested a fair and equitable division of property, and the trial court divided the equity in the home equally between the parties. This does not constitute an abuse of discretion.
 {¶ 88} Regarding the equalization of funds from certain accounts of the parties, evidence was introduced that Appellant received annual gross income in the amount of $100,000.00 while Appellee received an annual gross income of $62,000.00. When *Page 22 
assets were divided, Appellant had $76,239.49 in assets and Appellee had $70, 622.64. Appellant had $27,500.00 in liabilities for a net worth of $48,739.49 while Appellee had liabilities in the amount of $33,424.39, for a net worth of $37,198.25. The difference in net worth of the parties was $11,541.24. The court's allocation of $5,770.62 (half of the difference) from Appellant to Appellee was equitable and was not an abuse of discretion.
 {¶ 89} Regarding the finding of contempt and the order that Appellant pay attorney's fees, we would first note that the decision of whether to find a party in contempt of court rests in the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. State v. Kilbane (1980), 61 Ohio St.2d 201, paragraph one of the syllabus. Competent, credible evidence supports the trial court's contempt finding, and also its imposition of fines and fees. Appellant failed to pay the gas bill at the marital residence and was sentenced to three days in jail, but was informed that the contempt could be purged by bringing the delinquent gas bill current, paying any interest or penalty associated with the bill, and by removing plaintiff's name from the bill within six months. Additionally, Appellant removed money from certain restrained financial accounts and was sentenced to three days in jail, but was informed that the contempt could be purged by the defendant fully complying with all aspects of the final divorce decree as it relates to financial matters within the prescribed time periods. Appellant was ordered to pay $1,500.00 in attorney's fees for the findings of contempt within six months of the decree.
 {¶ 90} "The punishment for civil contempt is remedial or coercive in nature and for the benefit of the complainant, i.e., conditional fines and prison sentences." Porter v. *Page 23 Porter, 4th Dist. No. 07CA3178, 2008-Ohio-5566, at ¶ 30. Generally, in contempt proceedings, a trial court may compensate the complainant for losses. Id. citing Cincinnati v. Cincinnati DistrictCouncil 51 (1973), 35 Ohio St.2d 197, 207, 299 N.E.2d 686, 694. We do not find that awarding Appellee $1,500 in attorney's fees was an abuse of discretion.
 {¶ 91} With respect to the award of child support, we also find no error in the trial court's award. Appellee was named custodial parent of the two minor children. The amount of child support to be paid was calculated according to the worksheet and guidelines, and is therefore presumed to be the correct amount of child support. R.C. 3119.03. While the court may consider certain statutory factors in determining whether to grant a deviation in child support pursuant to R.C. 3119.22 and R.C. 3119.23, the court is not required to deviate from the worksheet and guidelines. In Drzal v. Drzal, 7th Dist. No. 05 CO 31,2006-Ohio-5230, cited by Appellant, the parties stipulated to a deviation of child support, but did not agree on the amount of the deviation. No such stipulation exists in the present case.
 {¶ 92} The trial court, in awarding child support, stated, through its entry:
 {¶ 93} "The defendant, per the attached worksheet marked as attachment "1" and incorporated by reference herein, defendant shall pay child support at the rate of $1,703.95 per month plus processing fee. The attached child support worksheet shall be incorporated as if fully written herein and all information thereon shall be considered as findings." Based on the financial information contained within the worksheet, we do not find that the trial court abused its discretion in ordering Appellant to pay $1,703.95 in child support each month. *Page 24 
 {¶ 94} Appellant's eighth, ninth, and tenth assignments of error are overruled.
 XI. {¶ 95} In Appellant's eleventh, and final, assignment of error, she argues that the trial court abused its discretion in overruling her motion for a new trial, pursuant to Ohio Civ. R. 59(A)(1), (5), (6), (7),(9). Again, we disagree.
 {¶ 96} Civil Rule 59 provides, in pertinent part:
 {¶ 97} "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
 {¶ 98} "(1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;
 {¶ 99} * * *
 {¶ 100} "(5) Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property;
 {¶ 101} "(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;
 {¶ 102} "(7) The judgment is contrary to law;
 {¶ 103} * * *
 {¶ 104} "(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application."
 {¶ 105} Appellant specifically claims that the reasons supporting its motion are: *Page 25 
 {¶ 106} "1. The Court did not make or have made a record of the trial proceedings, thus denying Defendant of a meaningful appeal as provided in Article IV, Section 3 of the Ohio Constitution, Section 2505.03, Ohio Revised Code and In Re Sanitary Dist. (1954), 161 Ohio St. 259, and further constitutes a denial of due process and equal protection of law, justifying a new trial, pursuant to Rule 59(A)(1)(7)(9), Ohio Rules of Civil Procedure;
 {¶ 107} "The trial court refused to accept Plaintiff's admission that all but $10,000 of $120,000.00 of improvements on the parties' residence was paid for out of Defendant's inheritance, as well as part of the down payment which came from the sale of Defendant's pre-marital property, being grounds for a new trial, pursuant to Rule 59(A)(1)(4)(5)(7)(9), Ohio Rules of Civil Procedure;
 {¶ 108} "The trial court erred by permitting the Guardian ad Litem to act as advocate without furnishing either the court or the parties with a Guardian ad Litem's report and recommendation and then in permitting the Guardian ad Litem to argue urging that Plaintiff be found the proper custodial parent, such action depriving Defendant of a fundamentally fair trial in violation of the 5th Amendment to the Constitution of the United states and Article I, Section 16 of the Ohio Constitution, being grounds for a new trial pursuant to Rule 59(A)(1)(3)(6)(7)(9), Ohio Rules of Civil Procedure;
 {¶ 109} "The trial court, contrary to the record, found the Plaintiff the better parent solely because of an impression Defendant would not foster, honor and facilitate court-approved companionship, while ignoring Plaintiff's admission he did not keep his child support payments or his portion of the mortgage payment current for many months, as *Page 26 
well as evidence Defendant was the primary caregiver, who was admittedly a good and caring mother, such error being grounds for a new trial, pursuant to Rule 59(A)(1)(6)(7) and (9), Ohio Rules of Civil Procedure;
 {¶ 110} "The trial court erred in ordering Defendant to refinance the mortgage and equity loan and pay $53,601.00 within six (6) months or sell the real estate and split the equity, while leaving Defendant with the obligation to pay $2,451.00 in first mortgage and equity loan payments each month, plus a $1,738.00 child support order which is beyond Defendant's ability to pay, particularly when the Court made no finding or order to pay delinquent mortgage and child support payments Plaintiff failed to meet, being grounds for a new trial, pursuant to Section 59(A)(1)(6)(7) and (9), Ohio Rules of Civil Procedure;
 {¶ 111} "The trial court erred in failing to recognize the impact of forcing children to relocate to the Hilliard, Ohio, area or to an apartment from a large house with all amenities, to be cared for by grandparents while Defendant was available to work out of the home and had caregivers who would provide care for the children in their home, failure to consider such impact which dramatically affects the best interest of the children as grounds for a new trial, pursuant to Rule 59(A)(1)(6)(7)(9), Ohio Rules of Civil Procedure; and
 {¶ 112} "The trial court erred in dividing accounts without regard to the source and character as non-marital property, which constitutes grounds for a new trial, pursuant to Rule 59(A)(1)(6)(7) and (9), Ohio Rules of Civil Procedure."
 {¶ 113} These issues were all discussed in previous assignments of error, with the exception of discussing removal of the children to Hilliard, Ohio. In Appellee's response *Page 27 
to Appellant's motion for new trial, he denied that he was moving to Hilliard, thus making that claim moot.
 {¶ 114} Disagreement with a trial court's decision is not valid grounds for a new trial. For the reasons already stated in this decision in overruling Appellant's first ten assignments of error, we find that the trial court did not abuse its discretion in denying the motion for new trial.
 {¶ 115} Accordingly, Appellant's eleventh assignment of error is overruled.
 {¶ 116} For the foregoing reasons, we overrule Appellant's assignments of error. The judgment of the Licking County Court of Common Pleas, Domestic Relations Division, is affirmed.
Delaney, J., Farmer, P.J., and Edwards, J., concur.
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant. By: Delaney, J. Farmer, P.J. and Edwards, J. concur.
[1] See Trial Court's March 4, 2008, Entry denying Defendant-Appellant's Motion For New Trial.
[2] Civ. R. 53(D)(7) is also inapplicable, as it applies to proceedings before a magistrate.
[3] 9(C) Statement, p. 24.
[4] Appellant also cites Slutzker v. Slutzker (Dec. 5, 1994), 5th Dist. No. 1994CA00108, and Matik v. Matik (July 27, 2001), 11th Dist. No. 2000-G-2266, both of which are distinguishable. Slutzker involved an antenuptual agreement and an intervivious trust, neither of which exist in the facts of the present case, In Matik, the aggrieved party presented evidence as to monies that were in her bank account prior to the marriage, and therefore was separate property. No such evidence was presented here.
[5] 9(C) Statement, p. 18.
[6] 9(C) Statement, p. 24.
[7] A review of the record does not show that any fines were imposed on Appellant. *Page 1