[Cite as *Morgan Woods Homeowners' Assn. v. Wills* , 2012-Ohio-233.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


MORGAN WOODS HOMEOWNERS' ASSOCIATION

      Plaintiff-Appellee

-vs-

DAVID B. WILLS and SHARON J. WILLS

      Defendants-Appellants

JUDGES:
Hon. W. Scott Gwin, P. J.
Hon. John W. Wise, J.
Hon. Patricia A. Delaney, J.


Case No. 11 CA 57


O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Case No. 07 CV 01043 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | January 23, 2012 |
| APPEARANCES: | |

| For Plaintiff-Appellee | For Defendant-Appellants |
|---|---|
| W. PRENTICE SNOW | JAMES R. COOPER |
| MORROW & ERHARD CO., LPA | MORROW, GORDON & BYRD |
| 10 West Locust Street | 33 West Main Street |
| Post Office Box 487 | Post Office Box 4190 |
| Newark, Ohio 43058-0487 | Newark, Ohio 43058-4190 |

*Wise, J.*

**{¶1}** Appellants David B. Wills and Sharon J. Wills appeal from a May 16, 2011, decision of the Licking County Common Pleas Court finding in favor of Appellee Morgan Woods Homeowners' Association.

<u>STATEMENT OF THE FACTS AND CASE</u>

**{¶2}** The relevant facts of this case are as follows:

**{¶3}** Appellants David B. Wills and Sharon J. Wills purchased property located at 896 Howell Drive, Newark, Licking County, Ohio, in June, 2004. (T. at 135). The property is located in Morgan Woods, a platted subdivision, which is subject to certain covenants, easements and restrictions of record filed with the Licking County Recorder's Office on September 20, 2000. ("Morgan Woods Restrictions").

**{¶4}** Article IV of the Morgan Woods Restrictions establishes an Architectural Control Committee ("ACC"). The Morgan Woods Restrictions, as set forth in subsection 1(b) require the ACC to "establish, maintain, and preserve design standards" for all improvements in the Morgan Woods subdivision. Subsection 1(c) further provides that the ACC "shall, from time to time, establish architectural, building, and environmental standards for all improvements in Morgan Woods." Subsection 1(d) states that the decisions of the ACC regarding conformity to the design standards and restrictions contained in the Covenants "shall be conclusive and binding on all parties." No procedural requirements as to the adoption of design standards are contained in the Covenants.

**{¶5}** Section 2(a) of Article IV of the Covenants provides that no improvements visible from the exterior shall be made without the express written consent of the ACC.

**{¶6}** Section 2(b) of Article IV states, in pertinent part, as follows:

**{¶7}** "Approval shall be based, among other things, upon conformity and harmony of the proposed plans with the Design Standards, the restrictions contained herein, and other structures in Morgan Woods; the effect of erection and use of improvements on neighboring property; and conformity of the plans and specifications to the purpose and intent of the provisions hereof."

**{¶8}** The ACC was formed sometime in 2004. At the outset, the developer of Morgan Woods, Mid-Ohio Development Corporation, performed the functions of the ACC. (T. at 21). Then at the first annual meeting of the Morgan Woods Homeowners' Association in May, 2005, trustees were elected and those trustees assumed the duties of the ACC.

**{¶9}** Article V, Section 2(o), of the Morgan Woods Restrictions sets forth the process for the construction of a fence on property located in the subdivision. This Section states that "no fence, wall, or barrier of any kind may be erected, except as initially instituted by Declarant, or approved by the Architectural Control Committee, or required by law."

**{¶10}** If a property owner submits a proposal to the ACC, the ACC must approve or disapprove the submission within fourteen (14) days. If the ACC does not issue a decision within the time frame specified, then Section 2(c) states, "it shall be conclusively presumed that the Architectural Control Committee has approved those plans and specifications." Id.

**{¶11}** On September 9, 2006, Appellants submitted a proposal to the ACC for the construction of a fence to enclose the backyard of their property. The proposal contained detailed plans, specifications and an attached drawing.

**{¶12}** By letter dated September 15, 2006, the ACC advised Appellants that it had received the proposal on September 9, 2006. In the letter, the ACC rejected the proposed use of chain link and wire fencing and requested further information about the fence proposal and stated that the following criteria applied to the construction of a fence on Howell Drive:

**{¶13}** "Item bb of the Building Standards for Howell Drive states the following:

**{¶14}** "The fence height must be between 24 and 48 inches.

**{¶15}** "No fence can be installed outside of any building setback line. Therefore, the side fences must be installed at least 15 feet inside both lot lines. Any fence in front of the house must be at least 35 feet from the road.

**{¶16}** "No fence can have chain link or wire components."

**{¶17}** The ACC attached a document to the letter entitled "Protective Covenants and Building Requirements," which included the above "Item bb."

**{¶18}** The letter also reiterated that "written approval by the Architectural Committee must be granted before the fence can be installed."

**{¶19}** On September 26, 2006, the ACC members met with Appellants at their home to discuss the proposed fence. Appellants failed to accept any changes to their fence proposal. As a result, the ACC again stated its opposition to the fence plan. (T. at 29-30).

**{¶20}** On September 27, 2006, Appellants sent a letter to the ACC, arguing that their proposed fence design met the standards established in 2000 and that it was their intention to proceed with installation of the fence as proposed.

**{¶21}** Appellants next sent a letter to the ACC on October 4, 2006, informing the ACC that they had spoken with Frank Murphy, one of the owners of Mid-Ohio, and that he advised them that the design standards referenced in the ACC's September 15, 2006, letter had been changed in 2003.

**{¶22}** The 2003 changes referred to by Murphy were created on October 31, 2003, and set forth certain design standards for construction. These standards were set forth in the "Morgan Woods Subdivision: Design Standards" and created criteria for the construction of roofs, siding materials, garage doors, basketball backstops, and other items. The 2003 standards do not set forth any criteria for the construction of fences. (T. at 33).

**{¶23}** By correspondence dated October 9, 2006, the ACC sent a letter reiterating that any fence must be approved by the ACC prior to installation. The letter included the standards adopted by the ACC on October 6, 2006, affirming the 2000 fence design standards. (T. at 35-39).

**{¶24}** By letter dated October 11, 2006, Appellants contacted John Reid, an architect previously involved in decisions by the Homeowners' Association, claiming that Frank Murphy had advised them to contact him concerning their design plans and whether such conformed to the guidelines established on October 31, 2003.

**{¶25}** On November 16, 2006, Mr. Reid sent a letter to Appellants "approving" the fence and design plans "contingent upon the fence being installed within the building side yard setback lines (15 feet both sides)."

**{¶26}** Appellants subsequently entered into a contract with Newark Fence Company and on or about November 21, 2006, proceeded to install the fence as proposed. (T. at 155, 167-168). The fence was chain-link and was not installed 15 feet from the side boundary lines. (T. at 175).

**{¶27}** On November 24, 2006, the ACC sent a letter to Appellants advising that the ACC believed the fence construction violated the Morgan Woods Restrictions. The ACC stated that Appellants had not received the requisite approval. In addition, the ACC had adopted the guidelines set forth in its October 9, 2006, letter. These guidelines were adopted on October 6, 2006, and the ACC contended that the fence construction did not comport with those specifications as retroactively applied to the date of application.

**{¶28}** Plaintiff-Appellee Morgan Woods Homeowners' Association ("Appellee") filed a Complaint on July 13, 2007, in the Licking County Common Pleas Court against Defendants-Appellants David B. Wills and Sharon J. Wills ("Appellants") which alleged that Appellants had violated the Morgan Woods Restrictions by constructing a fence without the approval of the Architectural Control Committee ("ACC").

**{¶29}** In its complaint, Appellee requested an order directing Appellants to remove the fence, an injunction to prevent Appellants from erecting any fence on the property that had not been "expressly approved," for damages, and attorney fees.

**{¶30}** Appellants, by answer and counterclaim, contended that there were no properly established guidelines for the approval or disapproval of a request for the construction of a fence and that they did not have notice of the requirements which Appellee sought to enforce. In addition, Appellants alleged that their plans for the fence had been approved by Appellee's architect as well as by Appellee since Appellee did not respond to Appellants' plan within the time period prescribed by the Morgan Woods Restrictions.

**{¶31}** Appellants sought by counterclaim a declaratory judgment that Appellee acted unreasonably, arbitrarily, and contrary to law in its interpretation and enforcement of the restrictive covenants; that Appellants' plans and specifications were approved in accordance with the terms of the covenants; that the covenants did not require that fences in the subdivision be constructed within any setbacks; and that there were no design standards or other standards that reasonably provided notice to Appellants in accordance with the general land use plan for the subdivision.

**{¶32}** On August 6, 2008, this matter proceeded to trial before the Magistrate of the Licking County Common Pleas Court on August 6, 2008.

**{¶33}** The Magistrate's Decision was filed October 4, 2010, and found in favor of Appellee.

**{¶34}** On May 6, 2011, Appellants filed objections to the Magistrate's Decision.

**{¶35}** By judgment entry filed May 16, 2011, the Common Pleas Court of Licking County, Ohio, overruled Appellants' objections and adopted the Magistrate's Decision with modifications.

**{¶36}** Appellants now appeal, assigning the following errors for review:

<u>ASSIGNMENTS OF ERROR</u>

{¶37} "I. THE TRIAL COURT COMMITTED ERROR IN ITS DECISION AND JUDGMENT THAT APPELLANTS CONSTRUCTED A FENCE IN VIOLATION OF THE MORGAN WOODS COVENANTS AND RESTRICTIONS.

{¶38} "II. THE TRIAL COURT COMMITTED ERROR IN AWARDING ATTORNEY FEES AND COSTS TO APPELLEES."

I.

{¶39} Appellants claim the trial court erred in finding that Appellants' fence violated the covenants and restrictions of Morgan Woods. We disagree.

{¶40} Appellants argue that no applicable design standards for fence construction existed when they submitted their plan for approval, that Mr. Reid's correspondence was not given sufficient weight and further that the ACC failed to disapprove their plan within the requisite fourteen (14) day period as set forth in the Covenants.

{¶41} In civil cases, if some competent, credible evidence supports all the essential elements of the case, a reviewing court will not reverse the judgment as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 376 N.E.2d 578. In determining whether a civil judgment is against the manifest weight of the evidence, a presumption that the findings of the trial court are correct guides an appellate court. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial

judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.* This Court may not substitute our judgment for that of the trier of fact. *Pons v. Ohio State Medical Board* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

{¶42} The Supreme Court of Ohio has consistently held that "[w]here the language contained in a deed restriction is indefinite, doubtful and capable of contradictory interpretation, that construction must be adopted which least restricts the free use of the land." *Houk v. Ross* (1973), 34 Ohio St.2d 77, 296 N.E.2d 266, paragraph two of the syllabus, overruled on other grounds by *Marshall v. Aaron* (1984), 15 Ohio St.3d 48, 15 OBR 145, 472 N.E.2d 335. "Where the language in the restriction is clear, the court must enforce the restriction. Otherwise, the court would be rewriting the restriction. * * * The key issue is to determine the intent of the parties as reflected by the language used in the restriction." *Dean v. Nugent Canal Yacht Club, Inc.* (1990), 66 Ohio App.3d 471, 475, 585 N.E.2d 554, 556-557. Where the lot owner has notice of such a restriction and it is properly part of a general plan or scheme, the restriction is enforceable. *Haller v. Hickory Creek Homeowners Assn.* (Dec. 14, 2001), 1st Dist. No. C-010332.

{¶43} Here, while Appellants attempt to make much of 2003 changes to the design standards, we find such to be immaterial in that Article IV, Subsection 2(c) states that the ACC shall "from time to time establish architectural building and environmental standards for all improvements" in Morgan Woods. The records shows that the ACC adopted the original 2000 design standards in its correspondence of July 25, 2006, September 15, 2006, and again on October 6, 2006. Further, it is uncontested that

none of the parties involved herein were aware of the 2003 changes, believing that the 2000 standards were still in effect and unchanged.

**{¶44}** Furthermore, the Covenants, as set forth above, specifically state that no improvements visible from the exterior shall be made without the express written consent of the ACC, including "walls, fencing, and screening".

**{¶45}** Here, the ACC expressly rejected Appellants design plans on more than one occasion. Appellants knew they did not have approval to go forward with the erection of the fence and chose to proceed anyway.

**{¶46}** Appellants further argue that the ACC's denial of their plan was arbitrary, claiming that multiple other fences had been erected in Morgan Woods and that based on these fences, Appellants were unable to discern a pattern or design upon which to rely.

**{¶47}** A review of the record reveals that three other fences had been erected in Morgan Woods including a railing along a driveway, a short decorative fences and a short-length, picket fence along the back of a property which has since been removed. (T. at 41-45). None of these fences were similar in nature to Appellants' fence and further, all had been erected without prior approval from the ACC.

**{¶48}** Appellants also argue that the ACC failed to respond within fourteen (14) days to their request, claiming that the September 15, 2006, letter only directed Appellants to inapplicable restriction guidelines but failed to address the application. We find this argument unconvincing.

**{¶49}** Mr. Wills testified that he understood that the ACC and denied approval of the fence proposal. Further, the ACC sent additional correspondence to Appellants

concerning the fence and specifying further construction guidelines. Additionally, Appellants' September 27, 2006, correspondence to the ACC arguing that they believed their plan conformed to the design standards is evidence that they were aware that they had been denied approval to erect the fence herein.

**{¶50}** Even assuming *arguendo* that Appellants believed that Mr. Reid had approved their fence plans and that such reliance was reasonable, Appellants still failed to comply with the contingencies precedent as set forth in his correspondence.

**{¶51}** Based on the foregoing, we find that the trial court did not err in finding that the restrictive covenants in this case were enforceable and that Appellants had violated same.

**{¶52}** Assignment of Error I is denied.

II.

**{¶53}** In their second assignment of error, Appellants argue that the trial court erred in awarding attorney fees in this matter. We disagree.

**{¶54}** Ohio has long adhered to the "American rule" with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation in the absence of a statute or enforceable contract. *Fleischmann Distilling Corp. v. Maier Brewing Co.*(1967), 386 U.S. 714, 717, 87 S.Ct. 1404, 18 L.Ed.2d 475. In general, "the costs and expenses of litigation * * * are not recoverable in actions for damages, and ordinarily no attorney fees are allowed." *Weisel v. Laskovski*, 5th Dist. No. 2004CA00175, 2005-Ohio-1113. See also *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306.

{¶55} Pursuant to Ohio law, contractual provisions awarding attorney fees are enforceable and not void as against public policy so long as the fees awarded are fair, just, and reasonable as determined by the trial court upon full consideration of all the circumstances of the case. See *Nottingdale Homeowners' Assn., Inc. v. Darby* (1987), 33 Ohio St.3d 32, 514 N.E.2d 702; *Gaul v. Olympia Fitness Ctr.* (1993), 88 Ohio App.3d 310, 623 N.E.2d 1281.

{¶56} In *Nottingdale,* supra, the Court stated in the syllabus:

{¶57} "Provisions contained within a declaration of condominium ownership and/or condominium by-laws requiring that a defaulting unit owner be responsible for the payment of attorney fees incurred by the unit owners' association in either a collection action or a foreclosure action against the defaulting unit owner for unpaid common assessments are enforceable and not void as against public policy so long as the fees awarded are fair, just and reasonable * * *."

{¶58} Upon review, we find that the Covenants in this case allow for recovery of expenses, including legal fees, for enforcement and correction of violations of the covenants and restrictions.

{¶59} Article X, Section 1(c) provides for assessments for all costs of enforcements of any provision of the Covenants, "including, without limitation, all costs, expenses and legal fees."

{¶60} Further, Article XIV, captioned "Enforcement", Section 2, titled "Abatement and Suit", provides in "the event that any violation or breach of any restriction contained herein is not remedied by the lot owner within thirty (30) days of being notified of such violation or breach, the homeowners' association … shall have the right to enter the lot

involved and correct the violation at the expense of the owner or owners of the lot involved, the cost of which (including administrative charges and attorneys' fees) may be assessed and collected as a special individual lot assessment as provided in Article X hereof.  The homeowners' association … and all lot owners shall also have the right to enforce these restrictions by legal and/or equitable action and to cause any violation to be removed, by injunction or otherwise, and to collect damages, if any.  All remedies provided herein shall be cumulative, and not exclusive."

**{¶61}** In *Ashwood Homeowners' Assn. v. Reitor,* 12th Dist. No. CA2003-06-142, 2004–Ohio–3536, the plaintiff, Ashwood Homeowners' Association, commenced a declaratory judgment action against the defendant, a resident and member of the Association. The Association sought a declaratory judgment, pursuant to R.C. §2721.03, that the defendant was in violation of provisions of the "Declaration of Covenants, Conditions, Restrictions, and Reservations of Easements for Ashwood Home Owners' Association". The trial court in *Ashwood* granted summary judgment in favor of the Association, finding that the defendant had violated a restrictive covenant under the Homeowners' Declaration. The trial court also granted the Association's motion for attorney fees.  On appeal, the defendant argued that the trial court erred in granting attorney fees to the Association on the basis that attorney fees are precluded pursuant to R.C. §2721.16 because declaratory relief was sought. The Appellate Court rejected the defendant's contention, holding that R.C. §2721.16 did not preclude the award of attorney fees because the action involved the enforcement of restrictive covenants (i.e., not a claim for declaratory relief), and thus the Association was entitled

to recover attorney fees pursuant to Article VII, Section 7.4.4 of the Homeowners' Declaration.

**{¶62}** As the attorney fees incurred by Appellee in this case were for the purpose of enforcing the restrictive covenants of Morgan Woods, we find that the trial court did not err in finding that Appellee was entitled to recover attorney fees.

**{¶63}** Appellants' second assignment of error is overruled.

**{¶64}** For the foregoing reasons, the judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.

By: Wise, J.

Gwin, P. J., and

Delaney, J., concur.

_____

_____

_____

JUDGES

JWW/d 0109

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


MORGAN WOODS HOMEOWNERS'  :
ASSOCIATION
                          :
                          :
        Plaintiff-Appellee   :
                          :
-vs-                      :        JUDGMENT ENTRY
                          :
DAVID B. WILLS and SHARON J. WILLS   :
                          :
        Defendants-Appellants   :        Case No. 11 CA 57


For the reasons stated in our accompanying Memorandum-Opinion, the

judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed.

Costs assessed to Appellants.



_____


_____


_____

                                   JUDGES