[Cite as *Enviropro Plastics, Inc. v. Trickett*, 2014-Ohio-1707.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| ENVIROPRO PLASTICS, INC., ET AL. | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
|      Appellees/Cross-Appellants | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2013 CA 00195 |
| HOWARD TRICKETT | |
|      Appellant/Cross-Appellee | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common
Pleas, Case No. 2012 CV 03354


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     April 21, 2014


APPEARANCES:

For Appellees/Cross-Appellants     For Appellant/Cross-Appellee

MATTHEW L. MOHR     JON A. TROYER
BRENT A. BARNES     1953 Gulf Street, NW
GEIGER TEEPLE ROBINSON     Uniontown, Ohio 44685
& McELWEE
1844 West State Street, Suite A
Alliance, Ohio 44601

*Wise, J.*

{¶1}. Appellant/Cross-Appellee Howard J. Trickett appeals the decision of the Court of Common Pleas, Stark County, which awarded various damages in an eviction and breach of contract case involving Appellees/Cross-Appellants Enviropro Plastics, Inc., Robert Kirk, and Christopher Kirk. The relevant facts leading to this appeal are as follows.

{¶2}. Appellee Enviropro Plastics, Inc. is a plastics business operating in Alliance, Ohio. It specializes in extruding plastic lumber, chiefly for use in the pallet industry, via plastic recycling. Tr. at 21. From its commencement of operations in 2002 until late 2011, the company was co-owned by Christopher Kirk and Robert Kirk. On or about December 30, 2011, Appellant Trickett entered into a purchase agreement to buy the business assets for the sum of $50,000.00. Tr. at 26.

{¶3}. In conjunction with the purchase agreement, Appellant Trickett and Appellee Christopher Kirk entered into an employment agreement whereby Christopher Kirk agreed to work for appellant on an "at will" basis for $3,000.00 per month. The employment agreement contained a non-compete provision with appellant within a 100-mile radius of Canton, Ohio. In addition to having appellant take over certain assets, the parties agreed that appellant could occupy the Enviropro facility in Alliance for a monthly rental fee.

{¶4}. Appellant operated the extrusion business at the facility from January 2012 until October 2012. Appellant later testified that he had sales and revenue in this period, but he experienced various mechanical problems with some of the assets.

**{¶5}.** Eventually, Appellant Trickett began to withhold his rent payment. On August 29, 2012, Appellee Enviropro filed a forcible entry and detainer action against Appellant Trickett in the Alliance Municipal Court.

**{¶6}.** On October 2, 2012, appellant filed a motion to dismiss the forcible entry and detainer action on jurisdictional grounds. The municipal court heard the motion and found that on September 25, 2012, Appellant Trickett had tendered a check for $2,500.00 to Christopher Kirk, which he endorsed and deposited. This sum represented rent of $1,500.00, attorney fees of $400.00, and court costs of $100.00. However, the municipal court denied the motion to dismiss, although it also denied a writ of restitution on the first cause of action in the complaint. See Judgment Entry, Alliance Municipal Court, October 9, 2012.

**{¶7}.** On October 23, 2012, Appellant Trickett filed a nine-count counterclaim against Appellee Enviropro and a third-party complaint against Robert Kirk and Christopher Kirk. These counts included breach of purchase contract warranty and breach of employment contract. On October 24, 2012, the case was transferred to the Stark County Court of Common Pleas.

**{¶8}.** In the meantime, after appellant had vacated the Alliance facility on or about November 1, 2012, appellees discovered that a large door had been damaged and the electrical "drop lines" had been removed. *See* Tr. at 41-44.

**{¶9}.** On April 8, 2013, Appellee Enviropro filed a motion for partial summary judgment requesting that the trial court dismiss Appellant Trickett's claims for attorney fees and costs. On the same date, Appellant Trickett filed his own motion for summary judgment. On May 1, 2013, the trial court denied both motions for summary judgment.

{¶10}. The matter proceeded to a bench trial in the Stark County Court of Common Pleas on May 9-10, 2013. Seven witnesses testified, including Robert Kirk, Christopher Kirk, and Appellant Trickett.

{¶11}. The trial court issued its first judgment entry on August 30, 2013. The trial court ruled in the eight-page entry, inter alia, that appellees had breached the agreement's warranty provision, finding that the assets were not in good operating condition and were not sufficient for the operation of the business. The court then found that appellant had incurred repair costs of $23,741.94 to restore the equipment in the facility to the condition as warranted in the parties' agreement. The court also found that a certain die was improperly listed with the assets and had to be returned to its rightful owner, causing a loss to appellant of $500.00. On the other hand, the court found that the cost to appellees to replace the electrical drop lines taken by appellant was $12,105.00, and that appellees had spent $1,635.55 to repair the door damaged while the building was under appellant's control.

{¶12}. Accordingly, the trial court concluded, inter alia, that appellant had been damaged in the amount of $24,241.94, and awarded judgment in said amount in favor of appellant and against Appellee Enviropro, Robert Kirk, and Christopher Kirk, jointly and severally, plus attorney fees and costs. The court also concluded that appellees had been damaged in the amount of $13,740.55, and awarded judgment in that amount in favor of appellees and against appellant.

{¶13}. The court scheduled a hearing to determine the amount of attorney fees to be awarded to Appellant Trickett for September 12, 2013. Via the second judgment entry, filed on September 16, 2013, the court ruled that appellant had failed to meet his

burden of establishing the prevailing hourly rate charged in the community for similar services and thus had failed to demonstrate the amount of fees that should be awarded. However, the court granted appellant $4,465.83 in costs of the action.

{¶14}. Appellant filed a notice of appeal September 27, 2013, and filed his initial brief on December 6, 2013. Appellees filed a notice of cross-appeal on September 30, 2013. Appellant herein raises the following six Assignments of Error:

{¶15}. "I.  THE MUNICIPAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION, DESPITE THERE BEING NO JUSTICIABLE CONTROVERSY AFTER THE PLAINTIFF ACCEPTED PAYMENT IN SETTLEMENT OF ALL CLAIMS, AS WELL AS PAYMENT FOR FUTURE RENT.

{¶16}. "II.  THE TRIAL COURT ERRED IN DENYING DEFENDANT/THIRD-PARTY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, WHEN THE ONLY RESPONSE IN OPPOSITION OFFERED NOTHING MORE THAN BARE DENIALS OF THE PROPERLY SUPPORTED FACTUAL EVIDENCE PRESENTED IN THE MOTION.

{¶17}. "III.  THE TRIAL COURT ERRED WHEN IT FAILED TO AWARD DEFENDANT/THIRD-PARTY PLAINTIFF DAMAGES AS INDEMNIFICATION FOR BUSINESS LOSSES INCURRED AS A RESULT OF THE BREACH OF CONTRACT COMMITTED BY THE THIRD-PARTY DEFENDANT.

{¶18}. "IV.  THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT INJUNCTIVE RELIEF TO DEFENDANT/THIRD-PARTY PLAINTIFF, DESPITE FINDING THAT THE THIRD-PARTY DEFENDANT WAS ENGAGED IN A COMPETITIVE BUSINESS, IN VIOLATION OF A COVENANT NOT TO COMPETE.

**{¶19}.** "V.   THE TRIAL COURT ERRED IN GRANTING PLAINTIFF'S CLAIM FOR DAMAGES WHEN THE ASSET PURCHASE AGREEMENT TRANSFERRED ALL ASSETS OF THE BUSINESS, AND THE ASSETS AT ISSUE WERE ELECTRICAL DROPS CONSIDERED TO BE COMMERCIAL TRADE FIXTURES BECAUSE THEY WERE SPECIFIC TO THE EQUIPMENT AND THE BUSINESS BEING CONDUCTED.

**{¶20}.** "VI.   THE TRIAL COURT ERRED WHEN IT FAILED TO AWARD DEFENDANT/THIRD-PARTY PLAINTIFF ANY ATTORNEY FEES, DESPITE HAVING RULED THAT HE WAS ENTITLED TO THE COSTS OF THIS ACTION AS WELL AS A RECOVERY OF ATTORNEY FEES."

**{¶21}.** Appellees herein raise the following sole Assignment of Error on cross-appeal:

**{¶22}.** "I.   THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF/CROSS-APPELLANT IN DENYING ITS MOTION FOR SUMMARY JUDGMENT AND AWARDING ATTORNEY'S FEES AND COSTS TO DEFENDANT TRICKETT AT TRIAL."

*Trickett's Appeal*

I.

**{¶23}.** In his First Assignment of Error, appellant maintains the municipal court, prior to the transfer to common pleas court, erred in denying his motion to dismiss appellees' forcible entry and detainer action based upon a purported settlement of the issues in that action. We disagree.

**{¶24}.** "The generally accepted rule in Ohio is that, by accepting *future* rent payments after serving a notice to vacate, a landlord waives the notice as a matter of

law, as such acceptance is inconsistent with the intent to evict." *King v. Dolton*, 9th Dist. Wayne No. 02CA0041, 2003-Ohio-2423, ¶ 11, quoting *Sholiton Indus., Inc. v. Royal Arms,* 2d Dist. Montgomery No. 17480, 1999 WL 355898 (additional citation omitted). In the case sub judice, appellant maintains that Enviropro accepted payment for past due rent, as well as future rent through October 2012. Thus, appellant urges, Enviropro waived its notice and was no longer in compliance with R.C. Chap. 1923, and the municipal court should not have proceeded on the forcible entry and detainer action.

{¶25}. Nonetheless, we have frequently recognized that an appellant, in order to secure reversal of a judgment, must generally show that a recited error was prejudicial to him. *See Tate v. Tate,* Richland App.No. 02–CA–86, 2004–Ohio–22, ¶ 15, citing *Ames v. All American Truck & Trailer Service* (Feb. 8, 1991), Lucas App. No. L–89–295. As noted in our recitation of facts, appellant, on October 23, 2012, filed a nine-count counterclaim against Enviropro and a third-party complaint against Robert Kirk and Christopher Kirk. The counterclaim divested the municipal court of its jurisdiction and the case was transferred to the Stark County Court of Common Pleas. The municipal court action thus became the starting point for appellant's civil counterclaim case in which he ultimately obtained damages. Under these circumstances, we are unpersuaded the municipal court's decision to keep appellees' forcible entry and detainer action in effect (at least until the matter was transferred to the common pleas level) resulted in prejudicial error to appellant.

{¶26}. Appellant's First Assignment of Error is overruled.

II.

{¶27}. In his Second Assignment of Error, appellant contends the trial court erred in denying summary judgment in his favor.

{¶28}. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56 which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶29}. Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its

claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

{¶30}. The crux of appellant's argument is that appellees, in responding to the motion for summary judgment, attached only the nearly-identical affidavits of Christopher Kirk and Robert Kirk, both of which state, in regard to appellant's summary judgment motion: "The Allegations contained in paragraphs 1-8, 10-18, 21, 23, 25-31 are either inaccurate and/or not true," and "[t]he allegations and/or facts stated in paragraphs 4, 5, 6, 7, 8, 9, 10, 11, 16, 19, 23, 24, 25, 26, 28, 30, 33, 36, 39, 40-45 are either inaccurate and/or not true."

{¶31}. Appellant accordingly directs us to our decision in *Combs v. Spence*, 5th Dist. Licking No. 2006CA0034, 2007-Ohio-2210, wherein we reiterated: "A party cannot avoid summary judgment solely by submitting a self-serving affidavit containing nothing more than bare contradictions of the evidence offered by the moving party." *Id*. at ¶ 21.

{¶32}. However, we have also held that any error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made. *Harraman v. Howlett,* 5th Dist. Morrow No. 03CA0023, 2004–Ohio–5566, ¶ 23, citing *Continental Ins. Co. v. Whittington* (1994), 71 Ohio St.3d 150, 156, 642 N.E.2d 615.

**{¶33}.** Based on our review of the record, as further set forth *infra*, we find that genuine issues of material fact favoring appellees were demonstrated at trial; hence, we find the rule of *Harraman* applicable in the case sub judice.

**{¶34}.** Appellant's Second Assignment of Error is therefore found moot.

III.

**{¶35}.** In his Third Assignment of Error, appellant contends the trial court erred in failing to award him additional damages in the form of indemnification for business losses allegedly caused by Christopher Kirk's breach of the employment agreement. We disagree.

**{¶36}.** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (February 10, 1982), Stark App. No. CA–5758. Generally, a civil judgment which is supported by competent and credible evidence may not be reversed as against the manifest weight of the evidence. *See State v. McGill,* Fairfield App.No. 2004–CA–72, 2005-Ohio-2278, 2005 WL 1092394, ¶ 18. In *Eastley v. Volkman,* 132 Ohio St.3d 328, 972 N.E.2d 517, 2012-Ohio-2179, the Ohio Supreme Court reiterated the following in regard to appellate review of manifest weight challenges in civil cases: " '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.' " *Id.* at 334, 972 N.E.2d 517, quoting *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section

603, at 191–192 (1978). A reviewing court must determine whether the finder of fact, in resolving conflicts in the evidence, clearly lost his or her way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *See Hunter v. Green,* Coshocton App.No. 12–CA–2, 2012-Ohio-5801, 2012 WL 6094172, ¶ 25, citing *Eastley, supra.* In addition, in a bench trial, a trial court judge is presumed to know the applicable law and apply it accordingly. *Walczak v. Walczak,* Stark App.No. 2003CA00298, 2004–Ohio–3370, ¶ 22, citing *State v. Eley* (1996), 77 Ohio St.3d 174, 180–181, 672 N.E.2d 640.

**{¶37}.** The parties' employment agreement required, among other things, that Christopher Kirk was to "conduct business and regulate Employee's habits so as to maintain and increase the good will and reputation of Trickett," and, "that Employee will not directly or indirectly engage in or participate in any activities in conflict with the best interests of Trickett. * * *" *See* Employment Agreement, Section 2.

**{¶38}.** Appellant particularly challenges the following findings by the trial court:

**{¶39}.** 32. The Court finds that Trickett has failed to demonstrate that Enviropro has operated at a loss since his purchased [sic] as a result of inaccurate or misinformation provided by Enviropro and/or Christopher and Robert Kirk. Rather, the Court finds that the business has operated at a loss or at a profit lower than that anticipated by Trickett because Trickett added additional employees, an additional shift to operate the business 24 hours a day, and used lower grade plastic material for the manufacturing of the product.

**{¶40}.** Appellant, in his brief, directs us to various portions of transcript which, he maintains, demonstrate that responsibility for the quality of the product was with Christopher, who apparently was the keeper of the various formulae and techniques for mixing the raw plastic products processed at the facility. Appellant's son, Steve Trickett, testified at trial that Christopher was responsible for decisions such as adding shifts, making hiring recommendations and overseeing equipment, and he charged that Christopher had on occasion inflated production figures. Appellant further questions the trial court's findings that despite Christopher's illegal use of marijuana while at work, such activity was not in violation of the parties' employment agreement. Appellant also presents a "before and after" comparison of some of the accounting numbers, showing, for example, that in 2010, Enviropro had revenue of $111,369.00 and real income after expenses of $29,667.00, while in 2012, after appellant took over the business assets, revenue had slipped to $38,621.00, with labor, freight, and supply expenses up, dropping real income to minus $60,971.00. Appellant's theory throughout the case was that the decline in profits was attributable to Christopher.

**{¶41}.** Nonetheless, appellees countered at trial that Christopher was not contracted to be the operations manager. The trial court had before it evidence that appellant's son, Steve, did verbally give tasks to Christopher, who was under a duty to perform all "assigned" tasks under the explicit terms of the employment agreement. Other testimony indicated that appellant did make some decisions regarding the plastic materials brought into the facility. We find there was adequate support in the record for the conclusion that the business losses in the plastic extruding activity were the result of appellant's own decisions. Furthermore, the correlation of Enviropro's 2012 annual loss

number to the hiring of Christopher under the employment agreement is subject to wide interpretation and does not necessarily establish a cause-and-effect relationship. It is well-established that the trier of fact (in this instance the trial judge herself) is in a far better position to observe the witnesses' demeanor and weigh their credibility. *See, e.g., Taralla v. Taralla,* Tuscarawas App. No. 2005 AP 02 0018, 2005–Ohio–6767, ¶ 31, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. Upon review, we find no basis to disturb the trial court's findings and conclusions in this matter in regard to appellant's claim for damages under the employment agreement.

{¶42}. Appellant's Third Assignment of Error is overruled.

IV.

{¶43}. In his Fourth Assignment of Error, appellant contends the trial court erred in denying him injunctive relief as to the covenant not to compete regarding Christopher Kirk. We disagree.

{¶44}. Our standard of review regarding the granting of an injunction is whether the trial court abused its discretion. *City of Canton v. Campbell,* Stark App.No. 2001 CA00205, 2002-Ohio-1856, citing *Mechanical Contractors Association of Cincinnati, Inc. v. University of Cincinnati* (2001), 141 Ohio App.3d 333, 338, 750 N.E. 2d 1217. Furthermore, it is well settled that an injunction will not issue where there is an adequate remedy at law. *Mid-America Tire, Inc. v. PTZ Trading Ltd.,* 95 Ohio St.3d 367, 2002-Ohio-2427, ¶ 74 (citations omitted).

{¶45}. The employment agreement in the case sub judice generally restricts Christopher Kirk from engaging in competition with appellant's utilization of the business assets purchased and from disclosing trade secrets and competitor information. Said

agreement includes a geographical limit in the form of a 100-mile radius surrounding Canton, Ohio. The trial court determined that Christopher was working as a supervisor at a plastic extruding and molding company in Parkman, Ohio. However, the trial court declined to take judicial notice that Parkman was inside of the aforesaid 100-mile radius of Canton. See Judgment Entry, August 30, 2013, at 6. We note appellant did not ask to be heard on the matter at trial under Evid.R. 201(E), although we recognize that a trial court may take judicial notice whether requested or not.  See Evid.R. 201(C).

{¶46}. We review decisions by a trial court  regarding judicial notice under an abuse of discretion standard. See Molitor v. Gaddis (Aug. 25, 1999), Morrow App. No. CA 875, 1999 WL 770688. Although a trial court may be under a duty in some circumstances to take judicial notice of certain statutes and ordinances (see e.g., City of Cleveland v. Keah (1952), 157 Ohio St. 331, 336, 105 N.E.2d 402), we are aware of no mandate for such judicial recognition of specific geographical facts not demonstrated at trial, nor is a trial judge required to utilize modern technology herself to ascertain such facts, as suggested by appellant.  We therefore find no abuse of discretion in the trial court's decision in this instance to decline taking judicial notice of geographical distances and to deny injunctive relief regarding the non-competition clause of the parties' agreement.

{¶47}. Appellant's Fourth Assignment of Error is overruled.

V.

{¶48}. In his Fifth Assignment of Error, appellant contends the trial court erred in calculating damages by not including the electrical "drop lines" as part of the assets purchased by appellant. We disagree.

**{¶49}.** In its August 30, 2013 judgment entry, the trial court made the following pertinent findings at pages 2-3:

**{¶50}.** 9. During the negotiations regarding the sale of Enviropro's assets, the parties discussed the electrical system that operated the equipment. In 2002, Enviropro installed an electrical system in its Armour Road facility for $20,000.00. The electrical system was comprised of a junction box on a wall and conduit running from the junction box across the walls and ceiling to another junction box above the equipment. The equipment would plug into the junction box located above it via 'drop lines.'

**{¶51}.** 10. Trickett desired to purchase the electrical system, specifically the 'drop lines;' however, because it was part of the Armour Road facility, Enviropro did not intend on selling it.

**{¶52}.** 11. On December 30, 2011, Enviropro and Trickett entered into a purchase agreement ('the agreement') for the sale of Enviropro's assets. The agreement was drafted by counsel for Trickett and contained 4 exhibits ***.

**{¶53}.** 12. The electrical system and its 'drop lines' described above are not included in the agreement or in the exhibits thereto.

**{¶54}.** 13. The Court finds that the language relied upon by Trickett that the electrical system's 'drop lines' are 'fixtures' or 'trade fixtures' referenced in Article I, Section 1.1(a) unpersuasive as the Court finds that such drop lines were, in fact, part of the facility.

**{¶55}.** The purchase agreement at issue includes the following clause:

**{¶56}.**Section 1.1 <u>Purchase and Sale of the Purchased Assets.</u> \*\*\* For purposes of this Agreement, the term 'Purchased Assets' shall mean and include *any and all assets* of Sellers, which are located at, used in or arise from the operation of the Business, *including but not limited to,* the following:

**{¶57}.**(a) *Any and all machinery, equipment,* furniture, fixtures, materials, *electronics, trade fixture,* and all other items of tangible personal property of Seller, utilized in connection with the Business, including, but not limited to those items set forth on Exhibit A \*\*\*.

**{¶58}.** (Emphasis added).

**{¶59}.** Our research reveals no Ohio case law specifically addressing whether electrical drop lines in an industrial setting are considered affixed to the building. However, when interpreting a contract, a court must first examine the plain language of the contract for evidence of the parties' intent. *See Oberst v. Oberst*, 5th Dist. Fairfield No. 08-CA-34, 2009-Ohio-13, ¶ 60, citing *Klug v. Klug,* 2nd Dist. Montgomery No. 19369, 2003-Ohio-3042, ¶ 13 (additional citations omitted). In the situation sub judice, as appellees urge in their response brief, the purchase agreement at issue incorporated lists of numerous specific items, including dies, compressors, and pallet jacks; therefore, it was not unreasonable for the trial court to recognize that approximately $12,000.00 to $20,000.00 in electrical components likewise would have been listed had the parties intended them to be sold to appellant. Furthermore, even if ambiguity should be recognized in the above clause, evidence was adduced that Robert Kirk informed

appellant during negotiations for the purchase agreement that the drop lines should not be removed and were "property specific." *See* Tr. at 47-48.

{¶60}. We therefore find no reversible error in the trial court's accounting of the replacement value of the electrical drop lines in the damages calculation to appellees.

{¶61}. Appellant's Fifth Assignment of Error is overruled.

VI.

{¶62}. In his Sixth Assignment of Error, appellant argues the trial court erred in declining to award him attorney fees. We disagree.

{¶63}. An award of attorney's fees lies within the sound discretion of the trial court. *Rand v. Rand* (1985), 18 Ohio St.3d 356, 481 N.E.2d 609. In the case sub judice, the trial court, in its decision regarding said fees, relied upon this Court's decision in *TCF National Bank v. Smith*, 5th Dist. Stark No. 2009 CA 00101, 2010-Ohio-1336, in which we reiterated: " 'The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.' " *Id*. at ¶ 20, citing *Hensley v. Eckerhart* (1983) 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40. The trial court proceeded to award zero attorney fees to appellant, noting that there had been "no evidence produced with respect to the prevailing rate charged by attorneys in Stark County." Judgment Entry, September 16, 2013, at 2.

{¶64}. Appellant presently emphasizes that the employment agreement between appellant and Christopher Kirk made Christopher responsible for "any and all" attorney

fees in the event appellant was required to enforce the agreement, with no "reasonableness" language in regard to such fees.

{¶65}. However, we have previously held: "Pursuant to Ohio law, contractual provisions awarding attorney fees are enforceable and not void as against public policy so long as the fees awarded are fair, just, and reasonable as determined by the trial court upon full consideration of all the circumstances of the case." *Morgan Woods Homeowners' Assn. v. Wills*, 5th Dist. Licking No. 11 CA 57, 2012-Ohio-233, ¶ 55. The Seventh District Court of Appeals has similarly recognized: "Although a contractual provision may entitle a prevailing party to attorney's fees, the prevailing party still has the burden of proving the reasonableness of the fees." *Unick v. Pro–Cision, Inc.,* 7th Dist. Mahoning No. 09 MA 171, 2011–Ohio–1342, ¶ 27.

{¶66}. Upon review, we are unpersuaded the trial court abused its discretion in awarding appellant $0 in attorney fees under the facts and circumstances presented.

{¶67}. Appellant's Sixth Assignment of Error is overruled.

### *Enviropro's Cross-Appeal*

### I.

{¶68}. In their sole Assignment of Error on cross-appeal, appellees contend the trial court erred in denying their motion for partial summary judgment regarding attorney fees and costs and in subsequently awarding costs of $4,465.83 to appellant. We disagree.

{¶69}. Appellees are essentially asking this Court to review the enforceability of the portion of the parties agreement that required appellees to indemnify appellant against any "adverse consequences" resulting from breach by appellees, which was

defined in the agreement as "including court costs and reasonable attorneys fees and expenses." Appellees, relying on *Motorists Ins. Co. v. Shields*, 4th Dist. Athens No. 00CA26, 2001-Ohio-2387, urge that the aforesaid provision, which was part of an agreement drafted by appellant's counsel, should not have been enforced on the basis that it promoted litigation and acted as a penalty. However, in addition to our aforecited holding in *Morgan Woods*, *supra*, this Court has concluded: " *** [W]e believe that it would be illogical to hold unenforceable a contractual provision for the payment of attorney fees in a commercial transaction where there is no evidence of unequal bargaining positions and no evidence of compulsion or duress." *See GMS Management Company, Inc. v. K & K Industries, Inc.* (April 29, 1991), 5th Dist. Stark No. CA 8279, 1991 WL 70154.

{¶70}. Upon review, we find no error or abuse of discretion in the trial court's decision to award costs of litigation to appellant as allowed under the parties' agreement.

**{¶71}.** Appellees' sole Assignment of Error on cross-appeal is overruled.

**{¶72}.** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.


By: Wise, J.

Baldwin, J., concurs.

Gwin, P. J., concurs in part and dissents in part.



JWW/d 0314

*Gwin, P.J., concurs in part; dissents in part*

{¶73} I concur in the majority's overall disposition of appellant's first, second, third, fourth, and fifth assignments of error and in the majority's disposition of appellees/cross-appellants' sole assignment of error. However, I respectfully dissent from the majority opinion concerning appellant's sixth assignment of error. I would sustain appellant's sixth assignment of error.

{¶74} In its August 30, 2013 judgment entry, the trial court found appellant was entitled to the costs of the action plus attorney fees due to appellees breach of the warranty provision of the asset purchase agreement. At the hearing held before the trial court on attorney fees, appellant testified to Exhibit A, which was a detailed billing statement containing the description of each billed item and the time spent on each entry. Appellant testified the total amount of fees contained in Exhibit A ($15,550.00) was an accurate number that he was actually billed for the attorney's time on the case and that the individual entries represented an accurate summary of the attorney work performed on his behalf. Appellee Robert A. Kirk, Jr. testified appellees incurred approximately $8,500 in attorney fees in the case. At the hearing, appellees argued certain items on Exhibit A did not pertain to the breach of warranty issue and thus were not reasonable attorney fees pursuant to the asset purchase agreement. Appellees encouraged the trial court to limit the attorney fees to the time spent on the breach of warranty claim. In its September 16, 2013 judgment entry, the trial court determined that no evidence was produced with respect to the prevailing wage charged by attorneys in Stark County and thus awarded appellant $0 in attorney fees on the breach of warranty claim.

**{¶75}** The Ohio Supreme Court has noted that contractual provisions awarding attorney fees are "enforceable and not void as against public policy so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all the circumstances of the case. *Nottingdale Homeowners' Assn., Inc. v. Darby,* 33 Ohio St.3d 32, 514 N.E.2d 702 (1987); *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396.

**{¶76}** Based upon the above, I would find the trial court abused its discretion in awarding appellant $0 in attorney fees. I would remand the case to the trial court to fully consider the facts and circumstances of the case as it relates to attorney fees, including the detailed billing statement in Exhibit A and the testimony of appellant and appellee Robert A. Kirk, Jr.

_____
HON. W. SCOTT GWIN